**In Re the MARRIAGE OF John Steven SMITH, Petitioner-Appellant,**

v.

**Judith Ellen Smith, Respondent.**

**No. KCD 28549.**

Missouri Court of Appeals, Kansas City District.

Feb. 28, 1977.

George G. Allen, Jr., Niewald, Risjord & Waldeck, Russell D. Jacobson, Kansas City, for petitioner-appellant.

Bob J. Hiler, Kansas City, for respondent.

Before SWOFFORD, P. J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

An appeal from an order of the trial court denying the father's motion for a change of custody of a five-year-old boy. The motion and the evidence taken thereon centered on the health of the child. The father's contention is that the trial court order is against the weight of the evidence. The trial court order is reversed with directions.

The parties were divorced in October, 1974, and the instant motion was heard in late December, 1975. The father's motion for a change in custody was based upon an allegation that the health of the child was deteriorating and that the custodian-mother was not providing the child with proper medical care and appropriate food.

The father produced the testimony of a pediatrician, Dr. Hagar, who, at the father's request, had examined the child about eight days before the hearing. This physician found upon examination an impaction of the bowels. Also produced were the records of a Dr. Garrison who had examined the child August 19, 1974, and September 10, 1974. The August exam disclosed on a complaint of constipation a hard dry stool for which an enema and glycerin suppositories were prescribed. The September, 1974, examination also revealed impaction of the bowels and a diet referred to as "Davidson's regime" was prescribed. This diet was in evidence and written upon it was the direction to avoid milk in the diet. On the September, 1974, examination by Dr. Garrison, "itchy eyes" were found and medication prescribed. Dr. Hagar found on the December, 1975, examination what he described as swollen nose membranes with backup "causing the blockage of a nasal membrane in the ears which causes hearing loss" which he attributed to allergic reaction. Dr. Hagar testified on the basis of the records and his examination that both the bowel condition and the allergy condition had existed since Dr. Garrison's 1974 examinations. The child had also been seen in November, 1975, by an associate of Dr. Hagar's, a Dr. Bare. Dr. Bare had prescribed a laxative in November. Dr. Hagar testified that if the medicine prescribed by Dr. Bare had been utilized, the conditions he found in December would not have existed. Dr. Hagar's opinion was that the ultimate result of chronic constipation would be to make the child laxative dependent.

He was further of the opinion that the child should be allergy tested when the bowel problem had subsided. The mother produced a letter from a Dr. Kantor which stated that the child had been seen since birth and had been found to be "a healthy normal youngster." Testimony disclosed that the mother had not mentioned a bowel problem nor an eye problem and that Dr. Kantor had seen the child last in June, 1975. Dr. Kantor's records showed he had seen the child three times in 1970, the year of birth, once in 1971, and once in June, 1972. On the 1975 visit three years later, the record reveals only an oral polio immunization, and some laboratory tests. No record of the results of a physical examination was offered.

The mother admitted she knew of the early diet, but denied she was advised of a November, 1975, diet. She further denied she had been given the laxative prescribed in November. She denied the child had any bowel difficulty since a few months subsequent to the divorce. She said she knew he was not to receive milk but disagreed with that dietary regime. She denied that he had bowel impaction as testified to by Dr. Hagar as having been discoverable by palpation on the November, and December, 1975, examinations. Other members of the wife's immediate family and friends either denied knowledge of the bowel problems or their existence.

There was a considerable amount of contention between the parties as to other matters, but they need not be detailed as they do not bear upon the issue which is controlling on this appeal.

■ The review in this appeal is governed by the standards of review enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The relevant portion of that standard in the light of the issue raised is that portion of *Murphy v. Carron* which permits reversal of the trial court ruling when it is against the weight of the evidence, such power to set aside a ruling as against the weight of the evidence to be exercised with caution and with a firm belief that the ruling is wrong.

■ So considered, the trial court's ruling on the motion is wrong. This because the trial court had to find against the husband's contention that the child's health had deteriorated and that the mother was not affording him proper health care and the dietary regime prescribed in 1974. Such a finding would fly in the face of the uncontradicted testimony of Dr. Hagar on the results of his physical examination as well as the record evidence of two other physicians making similar physical findings. The generalized statement of Dr. Kantor without evidence of a detailed physical examination and the relevant history cannot be said to contradict the other medical evidence. The mother's denial of the existence of a physical condition found by three physicians is entitled to little or no weight.

Having concluded the ruling on the motion is in error on the present record, it must be reversed. The record, however, does not permit this court to determine what is in the best interest of this child at this time. Over a year has passed since the motion was heard. There is nothing to indicate the present health of the child other than the husband's plea at trial and in this court that the child's physical health be determined objectively.

It is, therefore, directed that this cause be remanded for further proceedings and that the trial court order an examination of the child by an appropriate medical facility selected by the court. The costs of such an examination are to be taxed to the husband. Upon receipt of a report of this examination, the trial court shall provide an opportunity to the parties to supplement the present record with additional testimony and make such ruling upon the motion as then appears in the best interest of the child.

All concur.