CRANDALL, P.J., and KELLY, J., concur.

Randall **FERGUSON,**
**Petitioner-Respondent,**

v.

**Camilla Ferguson WILKE,**
**Respondent-Appellant.**

**No. 50402.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

July 15, 1986.

Dennis E. McIntosh, Farmington, for respondent-appellant.

David L. Mayhugh, Flat River, for petitioner-respondent.

REINHARD, Judge.

Mother appeals from an order modifying the custody provision of a dissolution decree, changing primary custody of child from mother to father. We affirm.

The parties' marriage was dissolved on January 14, 1978, in the Circuit Court of St. Francois County, Missouri. A stipulation as to custody was entered into by the parties and the court awarded primary custody of the child, S.F., born January 14, 1977, to the mother in accordance with the stipulation. Father was ordered to pay the sum of $25.00 per week for support of the child, and was granted visitation and temporary custody pursuant to the formal agreement of the parties.

Mother moved to the Columbia/Jefferson City area after the dissolution decree and obtained employment as a secretary with the University of Missouri-Columbia. She went to Georgia in 1980 and left S.F. with her parents in St. Francois County for about a year, then returned to Missouri. Mother remarried on June 11, 1982, and moved to Hubbard Lake, Michigan, where her new husband lived. There she resided with S.F., her new husband and his five children. Father has continued to reside in Farmington, Missouri, approximately 840 miles from Hubbard Lake, Michigan.

In October of 1983, the Juvenile Division of the Probate Court for Alpena County, Michigan, conducted a hearing pertaining to S.F. and his step-brothers' educational neglect and ordered that the children be made temporary wards of the Alpena County Probate Court effective November 28, 1983. On February 16, 1984, S.F. was removed from his mother's custody due to educational neglect and placed in father's custody subject to the supervision of the Michigan Department of Social Services.[1] The court's order contained a provision stating that it was to remain in effect until further order of a Michigan court or a court in Missouri. Father then filed a motion to modify the decree of dissolution in the Circuit Court of St. Francois County, Missouri, contending that there had been a change of circumstances warranting a change in custody.

At the August 20, 1985, hearing on the motion to modify the dissolution decree there was detailed testimony regarding the manner in which mother and her current husband educated the child. Mother and her present husband are active members of the Seventh Day Adventist Church, and they testified that they have developed a course of instruction for their children in their home and have received instructional material from the Hewitt-Moore Child Development Center. This program was not approved by the State Superintendent of Education in Michigan or the local superintendent of Alpena County. Mother and spouse are not certified teachers in the State of Michigan. Mother has a high school diploma, some military training in electronics, and has earned some college credit. Her spouse has an associate's degree in a technical field.

S.F. and his five step-brothers received approximately four hours instruction at home each weekday. The older children were taught history, science, math, read-

---

1. Custody of three of the Wilke children, S.F.'s step-brothers, was placed with their natural mother.

ing, writing and arithmetic. The younger children were taught eye coordination of left-to-right reading, spelling and art work. Mother testified that the children's education properly included learning to pay their own expenses and being taught to cook, sew, and do their own laundry. She stated that she taught the younger children math principles by using practical situations such as measuring out flour and dividing food at the dinner table. Further, she asserted that the Bible was heavily used in their lessons, serving as a history book, and that she taught the children how to read electronic schematics.

Mother testified that she objected to the public school because it taught evolution and the children would have to ride in the school bus with older children for approximately 45 minutes to an hour each way. She stated the Seventh Day Adventist school was also objectionable because they basically did the "same thing as the public school." Mother's specific complaints regarding the Seventh Day Adventist School were its emphasis on competition, the times the children were served their meals, the lack of discipline, and the lax dress code. She stated that it was her belief that children should not start reading before they are eight years old because "close up" reading could result in myopia, and their hearing or auditory discrimination might be impaired. Her objections to the school meals were based upon the fact that the Wilkes are strict vegetarians, and at home she feeds her children two times a day; once early in the morning and once about 4:00 in the afternoon. She claimed that the children should wait at least 4½ hours between meals to avoid harm to the stomach, citing as a source of authority the Yuchi Pines Institute in Seale, Alabama.

Mother admitted that she had previously testified, at the hearing in Michigan, that she was unwilling to send S.F. to any "institutionalized school or state certified school" although she knew it could mean losing custody of the child. She had further testified, when asked if she would be willing to "set up a certified or acceptable home-study situation," that "certified and accredited, I think, have no place in our home." Mother now says that if custody of S.F. is returned to her she intends to continue to teach him at home, but would be willing to implement an accredited course of instruction such as the Clonlara Program, which has a certified teacher visit the home once a week. She continues to maintain that "certified and accredited" have no place in their home, but says "we have to do that until our appeal goes through."

The court also received evidence regarding the living conditions of S.F.'s natural father and his current wife in Farmington, Missouri. A home study was prepared by the Division of Family Services of St. Genevieve County, Missouri, indicating that since S.F.'s removal from his mother's custody he has been enrolled in the Missouri public school system. The report indicated that S.F. has adjusted well to his father and his father's new spouse; however, the child encountered difficulties initially at the public school since he was educationally behind the children at his grade level. The first time father took S.F. to school S.F. "crawled under the table" because he was not used to being around large groups of children. S.F. was questioned in chambers and said he liked it best in Missouri because "I get to go to school, and I get to eat meat, and candy, and get to watch T.V., and get to read."

On June 11, 1985, the court entered its modified decree of dissolution of marriage transferring primary custody of the child from mother to the father. The trial court found "that the minor child [S.F.] was and had been for several months before the entry of the Michigan Order of February 16, 1984, educationally neglected by the [mother] in that virtually no education was being provided for the child by any means." The court added that, "[t]he educational neglect demonstrated by the evidence constitutes a substantial change of circumstances arising after the date of the decree of the dissolution of marriage, which change is so substantial and so continuing as to warrant a modification of the original decree of dissolution of marriage

so as to protect the best interest of the minor child."

Appellant raises one point on appeal:

The trial court erred in entering an order transferring the primary custody of [S.F.] from appellant to respondent because the court erred in finding that the minor child had received "virtually no education" and that the "educational neglect" was substantial and continuing warranting modification in that the finding was unsupported by substantial evidence and against the weight of the evidence.

The power of the court of appeals to set aside a custody award on the ground that it is against the weight of the evidence must be exercised with caution and on a firm belief that the judgment is wrong. *Plank v. Plank*, 670 S.W.2d 185, 189 (Mo. App.1984). We cannot set aside the trial court's order unless it is without substantial evidence to support it, it is against the weight of the evidence or erroneously declares or applies the law. *Chastain v. Chastain*, 632 S.W.2d 291, 292 (Mo.App. 1982).

Section 452.410, RSMo 1978, provides:

The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or its custodian and that the modification is necessary to serve the best interest of the child.

The change of the circumstances of the child or custodian must be significant before a child custody decree may be modified. *Dorris v. Dorris*, 623 S.W.2d 47, 48 (Mo.App.1981). We must also remain cognizant that the paramount concern in a custody case is the best interest of the child. *Leach v. Leach*, 660 S.W.2d 761, 763 (Mo.App.1983).

We find that the order modifying the dissolution decree was supported by substantial evidence and was not against the weight of the evidence. The court had before it considerable evidence regarding the previous circumstances in Michigan which supported its conclusion that S.F. was being educationally neglected. This is not a case where custody was changed because of mother's religious affiliation. Her testimony clearly revealed her dissatisfaction with her church's school. The educational neglect, whatever the motivation, constituted a substantial and continuing change in circumstances since the decree of dissolution.

In reaching its determination regarding the best interest of the child, the court had before it evidence of father's apparent lack of interest in the child prior to the proceedings in Michigan as well as evidence of father's intense interest subsequent to the Michigan court's finding of educational neglect. In addition there was evidence regarding living conditions for S.F. in Michigan and Missouri, including the education he would receive at each location. In connection with this latter point, mother continued to maintain that "certified and accredited have no place in [her] home," notwithstanding her professed willingness to comply with requirements established by court order. We decline to second-guess the hearing court's determination that modification of the custody provision was in S.F.'s best interest.

Judgment affirmed.

CRIST, P.J., and GARY M. GAERTNER, J., concur.