**In re The Marriage of Theo C. JOHNSON, Appellant,**

v.

**Shirley L. JOHNSON, Respondent.**

**No. WD 39846.**

Missouri Court of Appeals, Western District.

Sept. 27, 1988.

Rehearing Denied Nov. 1, 1988.

Sidney L. Willens, Kansas City, for appellant.

George A. Wheeler, Kansas City, for respondent.

Before NUGENT, P.J., and SHANGLER and TURNAGE, JJ.

NUGENT, Judge.

Petitioner Theo C. Johnson appeals from the trial court's denial of his motion to modify the custody of his son Teddy Johnson. The order denying his motion allowed the boy's mother, Shirley L. Johnson to retain primary custody of Teddy. We reverse with directions.

The record shows the following facts. Theo C. Johnson and Shirley L. Johnson were married for fourteen years before their divorce on April 29, 1986. Two children, Timothy and Teddy, were born of the union. The divorce decree awarded custody of both children to Mrs. Johnson. The decree also ordered Mr. Johnson to pay monthly child support payments of three hundred dollars per child, a total of six hundred dollars per month, and to pay Mrs. Johnson's five hundred dollar attorney's fee.

Following the divorce, Timothy did not move in with his mother, but continued to live with his father. Nevertheless, Mrs. Johnson sought to enforce the entire six hundred dollar child support payment by attaching Mr. Johnson's wages. Mr. Johnson subsequently obtained temporary relief at the February 23, 1987, hearing on his motion to modify the child support payments. The court credited Mr. Johnson's support account for $3,818.60 to reflect the time in which he supported Timothy in his home. No other evidence was heard, however, and Mr. Johnson's six hundred dollar child support obligation remained intact until November, 1987. At that time another court, upon evidence that Timothy had quit school, was working full time, and was living with his father, reduced the payment for Timothy to ten dollars per month. The support payment for Teddy remains three hundred dollars.

The present appeal arises from a motion to modify custody which Mr. Johnson filed on March 30, 1987. On May 6, 1987, the parties, both represented by counsel, appeared at the hearing on the motion. Mr. Johnson presented five witnesses in support of his motion. Mrs. Johnson presented no witnesses.

The evidence adduced at the hearing shows that Mrs. Johnson regularly leaves eleven-year-old Teddy alone at home seven nights a week to care for his two nephews, one eight years old and the other only four. Each night Teddy baby-sits the nephews, Charles and Reginald, whose mother abides in the Jackson County jail. Meanwhile, Mrs. Johnson goes out with her boyfriend to his job and to kill time "riding around." He does not employ her or pay her; she simply goes along to help and to keep him company.

Mrs. Johnson, who acknowledged these nightly activities, testified that she leaves the children alone only one and one-half hours, but Teddy testified that they are left alone two to three hours. The evidence is in conflict as to whether another of Mrs. Johnson's seven children, seventeen-year-old Timothy, is sometimes at home with

Teddy and the little children at night. The transcript is confusing, but the mother testified that she picks up Timothy when he gets off work at Romanelli's after 10:00 o'clock at night.

Mrs. Johnson testified that she saw nothing wrong with leaving eleven year old Teddy in charge of the two younger children every night or with sending him on errands on the city streets accompanied by the small children.

The testimony established beyond dispute, because it was confirmed by Mrs. Johnson's testimony, that she sent Teddy and the children on errands outside the home on the Paseo as far away as Prospect Avenue, both known to this court to be extremely heavily traveled streets. On one occasion, she sent Teddy and his nephews to a barbershop on Prospect. He could not find the shop and did not return. After about six hours she went to look for them, and when she found them she struck Teddy in the face and bloodied his nose. Teddy's testimony concerning that incident stands unrefuted. Mrs. Johnson in her testimony could see nothing wrong with sending the children out into the streets.

The trial court stated that the question about the propriety of leaving Teddy alone with his nephews was "a close one." Nevertheless, the trial judge, finding that no harm has resulted from Teddy's time alone, determined that it was in Teddy's best interest to remain in the custody of his mother. His proposed solution to Mrs. Johnson's practice of leaving Teddy, Reginald and Charles alone in the evening was that Mr. Johnson watch over them at that time.

The trial court also found "a history of a partnership of inappropriate discipline on the part of both parents." Testimony from both Teddy and Mrs. Johnson showed that after she found Teddy and his nephews on their ill-fated excursion to the barber shop, she "popped" Teddy in the face, bloodying his nose. Another incident of improper discipline was Mrs. Johnson's beating Teddy's "privates" with a belt after he failed to put laundry in the dryer. She slapped him, cursed at him, and threatened to "break his neck" when he spilled gasoline while attempting to fill her automobile. Because of Mrs. Johnson's warnings that Teddy had better not sit in her boyfriend's chair, he has been left with the impression that his mother cares more for her boyfriend than she does for him. Teddy also indicated that Mr. Johnson had spanked him with a belt.

The hearing also disclosed poor school attendance by both Timothy and Teddy. Timothy missed seventy-nine days of school in the period following his parent's divorce. Mr. Johnson's attempt to impose strict school attendance requirements on Timothy resulted in Timothy's moving back to his mother's apartment. Evidence was presented that Teddy missed sixty-two class periods and that he attended only one class. Mrs. Johnson denied any knowledge of these absences. The evidence is unrefuted, however, that Mrs. Johnson required Teddy to stay home one week to care for his nephews. The trial court made no finding regarding Teddy's educational needs.

Other information adduced at the hearing indicated that Teddy suffered an accident at a swimming pool from which he nearly drowned. His father visited him in the hospital and took him to his follow-up examination. When Teddy smashed his finger in a car door, he went without medical attention until Mr. Johnson took him to a doctor four days later. By that time, the doctor determined, Teddy's fingernail could not be saved. The trial court found that neither the drowning incident nor the smashed finger occurred as a result of poor supervision or parental neglect.

Mr. Johnson testified that his employer's insurance was available to provide for Teddy's dental care. Mrs. Johnson, however, cancelled the dental appointment she had made for Teddy. The trial court concluded that, because Mr. Johnson had ample opportunity to take Teddy to the dentist, Mrs. Johnson's failure to pursue dental care was of no consequence.

Mrs. Johnson, Teddy, and Mr. Johnson all testified that she prevented Mr. Johnson from seeing his son for about four months. She also interfered with Mr. Johnson's telephone contact with Teddy. Following a court order defining his visitation rights,

Mr. Johnson finally regained access to his son.

Mr. Johnson has worked for General Motors for twenty-two and a half years. At the time of the trial he was facing a lay-off on May 8, 1987. He was scheduled to return to work August 1, 1988. He has arranged with his employer to work daytime hours when he returns to work.

Mr. Johnson's twenty-four-year-old daughter, Lynn Brown, also testified. She lives with Mr. Johnson. She testified that she would be willing to stay with Teddy in the evenings at any time Mr. Johnson was not available.

Teddy testified that he loved both his father and his mother. At one time he testified that he would like to stay with his father because his father buys him clothes and things and comes to school to see how he is doing. Mr. Johnson also takes Teddy fishing and plays catch with him. Later Teddy testified that he wanted to live with both parents or that he wanted joint custody.

The trial court's written order contained no specific findings of fact. It stated that the petitioner's evidence failed to establish a sufficient change in circumstances to warrant modification. The written order's only mention of the best interest of the child was that such interests would be served by specifically establishing the father's visitation rights. Accordingly, the court established specific periods of visitation for Mr. Johnson but continued custody in Mrs. Johnson. The other judicial findings mentioned above were spoken from the bench.

On appeal the decision of the trial court will be sustained unless no substantial evidence supports the decision, unless it is against the weight of the evidence or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976) (en banc). The appellate court should exercise the power to set aside the judgment with caution, and do so only if convinced that the judgment is wrong. *Id.*

■ Section 452.410 [1] provides the standard for modifying a prior custody decree.

The hearing court must find "that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." *Id.* The trial court stated, "I'm inclined to believe that there's been no change of circumstances that is so substantial and continuing in nature as to render the previous order unreasonable." In a motion for modification of child custody orders, the court need not find that the changed circumstances have rendered the prior decree unreasonable. Instead, all that is required is a finding that because of a substantial change in circumstances modification is necessary to serve the best interest of the child. *Friend v. Jackson*, 714 S.W.2d 953, 955 (Mo.App.1986); § 452.410.

Therefore, insofar as the trial court required the petitioner to show that the changed circumstances rendered the prior decree unreasonable, the court erroneously declared the law. We will review the record not under the test thus erroneously declared but to determine whether the circumstances that occurred after the prior decree required a modification in Teddy's best interests.

■ Missouri appellate courts have considered several factors to determine whether a substantial change in circumstances has occurred. One factor relevant to this case is a lack of parental supervision. In *M.L.G. v. J.E.G.*, 671 S.W.2d 312 (Mo.App. 1984), despite the mother's practice of leaving her ten-year old daughter alone after school and in the evenings, the trial court refused to modify the custody decree. We reversed, citing this practice as one of the factors requiring modification. *See also L__E__(S__) v. J__A__E__*, 507 S.W.2d 681 (Mo.App.1974) (affirming modification in favor of father when mother left sons alone during her overnight trips with her boyfriend). In the present case, eleven-year-old Teddy is left to care for his young nephews each night while his mother keeps her boyfriend company. Teddy is also sent to run errands on busy, high speed streets. Those facts indicate a lack of supervision by his custodial parent.

---

1. Revised Statutes of Missouri, 1986.

■ Educational neglect is also an important factor in determining whether a change of circumstances has occurred. In *Ferguson v. Wilke*, 713 S.W.2d 611 (Mo. App.1986), the trial court modified custody in favor of the father when the mother had removed the children from school to pursue a course of non-accredited home instruction. The court of appeals upheld this decision, finding that the child's removal from a proper course of instruction was a sufficient change in circumstances. The best interest of the child would be served by placing him in the custody of a father who would see to the child's proper education.

In the instant case, Teddy's mother has not completely removed him from school. She did, however, at the very least keep him home from school for one week to watch his nephews. She demonstrated that she placed Teddy's baby-sitting duties above his educational needs. Her neglect of his educational needs is further established by her professed unawareness that Teddy had missed a total of sixty-two classes. In contrast, Mr. Johnson, has attended parent teacher conferences at Teddy's school. Mr. Johnson's commitment to his children's educational goals is further demonstrated by his imposition of strict school attendance rules on his other son, Timothy. Timothy's apparent unwillingness to comply with Mr. Johnson's rules led him to return to Mrs. Johnson's home. The poor educational guidance provided by Mrs. Johnson warrants a finding of changed circumstances.

■ Other evidence in this case requires a finding of changed circumstances. Mrs. Johnson curses at Teddy, and on one occasion threatened to break his neck. This type of verbal abuse has been held to be a factor in other decisions to modify child custody. *See Riley v. Riley*, 643 S.W.2d 298 (Mo.App.1982) (verbal abuse of children was one factor supporting trial court's decision to modify custody). Her behavior toward Teddy when she is with her boyfriend has created the impression that she cares more for her boyfriend than she does for Teddy. *See L__E__(S__) v. J__A__E__*, 507 S.W.2d 681, 686 (mother's apparent preference for her male companion supported a

change of custody). Her failure to keep Teddy's dental appointment or to seek medical care for his smashed finger is further evidence of changed circumstances. *See In re Marriage of Smith*, 548 S.W.2d 248 (Mo.App.1977) (mother's failure to follow doctor's orders for child's bowel ailment supported a change in custody). Interference with the non-custodial parent's visitation rights will also support a finding of changed circumstances. *McCammon v. McCammon*, 680 S.W.2d 196 (Mo.App. 1984); *Conoyer v. Conoyer*, 695 S.W.2d 480 (Mo.App.1985). Mrs. Johnson admitted that she kept Teddy away from his father for four months.

The testimony adduced at the hearing clearly establishes changed circumstances. Even if no single factor discussed above established changed circumstances, the combination of the factors clearly does. *In re Marriage of Scobee*, 667 S.W.2d 467 (Mo.App.1984) (combination of individually insufficient factors may establish changed circumstances). In the present case, the trial court's finding of no change in circumstances was against the weight of the evidence.

Before the changed circumstances will require a modification of custody, we must also conclude that the modification would be in Teddy's best interests. *See* § 452.410; *Friend v. Jackson, supra*. The trial court found that "the evidence does not indicate that there's been any harm done to the child as a result of the arrangement." Teddy's nightly baby-sitting duties, his numerous absences from school, his insufficient medical and dental care, and his subjection to physical and verbal abuse provide evidence that he has suffered harm. Nevertheless, in *L.H.Y. v. J.M.Y.*, 535 S.W.2d 304, 308 (Mo.App.1976), the court found that "it is not necessary to wait for manifestations of harmful consequence before action is taken." Here if the problems established by the evidence have not actually harmed Teddy, which we find very hard to believe, they have certainly created the potential for serious and permanent harm.

In contrast to the potentially harmful conditions in which Teddy now resides, the record shows that Mr. Johnson has been

employed at General Motors for over twenty-two years. He lives with his daughter and can provide a stable home for Teddy. He visits Teddy's school and makes sure that his son has medical care. Mr. Johnson spends time with Teddy, and they have a good relationship. Though Teddy testified that his father has spanked him, no evidence appears in the record that Mr. Johnson has physically abused his son. The best interests of the child dictate that, given the choice presented here, the child should be placed in the custody of his father.

Based on the foregoing, we find no substantial evidence to support the decision of the trial court to continue custody in the mother. We reverse with directions that the trial court modify the decree of dissolution to place Teddy in the custody of his father, entirely eliminate the award of child support for both boys and provide for reasonable visitations with the mother with the specific instruction that, at least until he is more mature, she not leave Teddy alone or with younger children at night for extended periods of time.

All concur.