**Terry Marie PATTON, Respondent,**

v.

**Gary Eugene PATTON, Appellant.**

**No. WD 53824.**

Missouri Court of Appeals,
Western District.

Submitted Jan. 7, 1998.

Decided July 7, 1998.

---

Harold L. Caskey, Butler, for appellant.

Christopher Hoberock, Nevada, for respondent.

Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

PER CURIAM.

Gary Eugene Patton appeals an order modifying a dissolution of marriage decree. Mr. Patton ("Gary") asserts that the trial court abused its discretion by refusing to order that Terry Marie Patton pay child support during the three summer months that Gary has custody of their minor child, Gina, refusing to abate Gary's support payment during these months or, in the alternative, by refusing to calculate an offset giving Gary credit for support that Mrs. Patton ("Terry") should pay during the summer months. Gary further contends that the court erred when it failed to find that it would be in Gina's best interests if Gary became her primary physical custodian. Gary challenges the court's award of attorney fees to Terry and the continuance granted by the court during the modification proceedings. Finally, Gary contends that the court violated the Americans with Disabilities Act and the Code of Judicial Conduct by refusing to allow his attorney, who is visually impaired, adequate time to review respondent's expert witness' report and to cross-examine that expert.

## BACKGROUND

On August 8, 1995, the marriage of Gary and Terry Patton was dissolved by the trial court which awarded the parties joint legal custody of their daughter, Gina. Terry was awarded primary physical custody of Gina, and Gary was given liberal visitation rights. Gary's visitation was on alternate weekends and for two hours each Tuesday and Thursday evening during the school year. Summer visitation began a week after the school year ended and extended to the week before school began in the fall. Terry had custody

of Gina on alternate weekends and for a two week visit during the summer. Gary also was granted visitation at other times, specifically Gina's spring break and during the Thanksgiving and Christmas holidays. Gary was ordered to pay child support in the amount of $282.75 per month. This figure had been adjusted to reflect the time that Gary had custody of Gina.

Both parents lived in Nevada, Missouri. On January 15, 1996, Terry took Gina and moved to St. Louis, Missouri. Terry had not told Gary about the move, nor did she tell Gina until the time of the move. Terry testified that she did not tell Gary about the move until she was on the road to St. Louis because she was afraid he would be abusive to her. On the day following Terry's move to St. Louis, January 16, 1996, Gary filed a motion for contempt, a motion for modification, and a motion for temporary custody. On February 26, 1996, after an evidentiary hearing, the trial court found that Terry was not in contempt and denied Gary's motion for temporary custody.

The hearing on the motion for modification was held October 6, 1996, and November 26, 1996. On October 6, Gary's attorney first asked the court for another court date when it appeared that the trial would last into the evening hours, but then informed the court that his co-counsel could finish that day. Terry's attorney informed the court that he could not continue into the evening. The trial court mentioned several open dates, but Gary's attorney had scheduling conflicts on those dates. Neither party objected when the case was continued to late November.

In the hearing, Terry testified that she moved to St. Louis because she had found a better paying job in St. Louis and that her objective was to go to school. She testified that Gina was doing well in school, was making friends in her neighborhood and was in Brownies. Terry said that Gary did not allow Gina to have friends. Terry also testified that Gina had been very excited at the opportunity to participate in her school's Christmas program. The Christmas program was scheduled to take place during Gary's visitation weekend. Terry offered to trade weekends with Gary. As an alternative,

Terry suggested that Gary attend the program. However, after Gary talked to Gina, Gina dropped out of the program because Gary had given Gina the choice of being in the Christmas program or seeing him on that weekend.

The parties presented conflicting evidence concerning Gina's well-being. Terry testified that Gina was a cheerful child. In contrast, Gary claimed that when Gina was in his custody she was clingy, depressed and anxious. Both sides also presented testimony related to Gina's mental health. Gary's experts testified that Gina suffered from depression. However, Terry's expert testified that Gina did not have major depression, major anxiety or posttraumatic stress.

On the subject of Gina's mental health, Terry was allowed to call an expert witness out of time at the November hearing. This witness, Dr. Ann Duncan, testified concerning her fees for administering tests, preparing a report, and testifying. During cross-examination, Gary's attorney requested time to have Dr. Duncan's report read to him (Gary's attorney is visually impaired). The court granted counsel's request. Thereafter, counsel requested two more hours to continue the cross-examination. At that time it was nearly two o'clock. Dr. Duncan stated she needed to catch a plane at 4:15 p.m. The court told counsel that if Dr. Duncan was detained beyond three o'clock, her costs would be on his tab. Counsel stated that he had no further questions.

On November 27, 1996, the trial court entered its order modifying the dissolution decree. The judgment stated that the court had heard evidence and that its judgment was based upon that evidence. The trial court found a change of circumstances as a result of Terry's move to St. Louis and with respect to the amount of child support due under Rule 88.01. Primary physical custody of Gina remained with Terry. Gary's support obligation was increased to $342.00 per month and was not adjusted to reflect the time Gina spent with Gary during the summer. Gary was ordered to pay $3,500.00 of Terry's attorneys' fees. Gary appeals.

## ABATEMENT OF CHILD SUPPORT DURING EXTENDED VISITATION

Review of the trial court's determination of a child support modification is performed under the auspices of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), which directs that the trial court's ruling will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Peery v. Peery*, 933 S.W.2d 912, 914 (Mo.App.1996). The evidence is viewed in the light most favorable to the judgment; all contrary evidence is disregarded. *Leone v. Leone*, 917 S.W.2d 608, 611 (Mo.App.1996). Unless the trial court has abused its discretion or has erroneously applied the law, we will not reverse its determination of an award of child support. *Id.* There is an abuse of discretion when the trial court's ruling is clearly against the logic of the circumstances and is so arbitrary as to shock one's conscience and indicates a lack of consideration. *Rios v. Rios*, 935 S.W.2d 49, 52 (Mo.App.1996).

Gary first argues that the trial court abused its discretion and erroneously applied the law by refusing to order that Terry pay child support during the three months of summer when Gina is in his custody. He complains that the court erred by its refusal to abate his support payments during the summer months or, in the alternative, by not calculating an offset to give him credit for the time Gina is in his custody. Under the terms of the original dissolution decree, Gary was ordered to pay child support in the amount of $282.75 per month, which allowed Gary credit for the time Gina spent with Gary during the summer.

Section 452.370.1, RSMo 1994 provides that "the provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." The same section establishes that if the financial circumstance of the parties would result in a change in the amount of support by more than 20%, a *prima facie* showing is made of a substantial and continuing change in circumstances. § 452.370.1, RSMo 1994. The trial court found a change in circumstances with respect to child support without reciting the facts on which it was relying. It increased the amount of Gary's child support payment, ordering that he pay $342.00 per month. In contrast to the original decree, no provision for abatement for the summer months was made and no finding was made that the amount was unjust.

Gary relies on *Leone v. Leone*, 917 S.W.2d 608 (Mo.App.1996) as justification for his argument that Terry should pay support during the summer months. He contends that *Leone* stands for the proposition that where the non-custodial parent has custody of the child for all but three weeks during the summer months, and there is no evidence that the custodial parent has expenses justifying an order of no support, the custodial parent should pay support or, in the alternative, payments should be annualized to take that amount into consideration.

In *Leone*, this court held that the trial court abused its discretion in failing to award child support to Father where Father had custody of the child for all but three weeks during the summer, as well as every Friday through Sunday during the school year. *Leone*, 917 S.W.2d at 612. In *Leone* the parties had nearly equal custody (roughly 51% to 49% in favor of Father) of the children when the entire year was considered. *Id.* In addition, Mother and Father had nearly equal incomes, and few assets. *Id.* Here, the parties have relatively equal incomes, with Gary making slightly more. The record fails to reveal anything about the parties' assets, but at the time of the dissolution in 1995, neither party had significant assets. Gary has custody of Gina during most of the summer and on alternate weekends throughout the school year. Terry has custody of Gina on alternate weekends during the summer and for four weeks during the summer. Gary has custody of Gina for 122 days a year, or approximately 33% of the year.

In the record created below, the evidence showed that Father worked full-time and had physical custody of Gina for at least seven weeks during the summer. Father testified that he paid $40.00 per week to provide

daycare for Gina during the summer. For the entire year, Gary has custody of Gina for approximately 122 days, or 1/3 of the year. Under the modified decree, Father would not receive any child support from Mother during his periods of summer visitation. There was no evidence that Mother would incur any ongoing child care expenses during those extended periods of the summer when Gina was to be in the custody of Gary. In *Leone*, the total amount of time that the parents spent with the child in *Leone* was closer to actual parity (51.3% for Father in *Leone* as opposed to 33% in the present case). However, the item of key significance in *Leone* was the extended periods of summer visitation with Father. *Id.* at 612. The continuous and substantial periods of visitation are significant, along with the relative proportion of time the child is with the respective parents.

In *Lenger v. Lenger*, 939 S.W.2d 11, (Mo. App.1997), we held that the court was not required to grant an abatement under § 452.340 because we presumed the court considered that time in the non-custodial parent's care when determining the amount due. Although Rule 88.01(b) confers a presumptive validity on Form 14 child support amounts. Rule 88.01(a) requires the court to consider *all* relevant factors. Even if the court is not *required* to alter presumed child support amounts to reflect substantial time with both parents, it is obvious that substantial time with both parents is a relevant factor. That is why comment D permits the court to deviate from the presumed amount in the case of substantial time with each parent. Here, the court allowed an abatement in the original decree but then failed to allow one in the modified decree without an explanation, and without any reason apparent from the record, and without a request from a party. These factors are sufficient to rebut the presumption that the trial court did in fact give consideration to the substantial time as a relevant factor. Thus, we conclude that we cannot necessarily presume that the trial court in this case gave consideration to substantial time as a relevant factor. Accordingly, we will reverse the award of child support and remand with instruction for the trial court to consider whether to allow an abatement for the period of time of Gina's summer visitation with Gary.

## CUSTODY

■ In Point II, Gary contends that the trial court erred in applying the law as set forth in § 452.410 and that it abused its discretion when it refused to consider the "overwhelming" evidence that a change in custody is in Gina's best interest. He argues that Terry's move thwarted the intent of the trial court in the original decree that each party have custody of Gina for substantial periods of time and that the move substantially interfered with Gary's court-ordered visitation. Gary points to the evidence that he presented showing that Gina exhibited symptoms of depression, stress and anxiety. He points out that Terry endangered Gina by allowing the child to ride on a motorcycle and that Terry refuses to consult with him and keep him informed about Gina.

■ In making his arguments, Gary focuses on evidence unfavorable to the trial court's ruling. We are obligated to view the evidence, and inferences drawn therefrom, in the light most favorable to the trial court's judgment. *Cook v. Warren*, 916 S.W.2d 409, 413 (Mo.App.1996). Not only do we start with the presumption that the court has made its determination consistent with the child's best interests, we accord more deference to that decision than in cases that do not involve child custody. *Senciboy v. Thorpe*, 947 S.W.2d 116, 119 (Mo.App.1997). This court does not pass on the credibility of the witnesses at trial. Thus, arguments by parties as to who presented the more credible testimony are inappropriate and ineffective. The trial court is in the best position to judge the credibility of the witnesses before it and those elusive, intangible factors not readily discernable in the record, such as the character and sincerity of those witnesses. *In re Marriage of Powell*, 948 S.W.2d 153, 156 (Mo.App.1997). Moreover, the trial court has the freedom to believe all, part or none of the testimony of any witness. *Id.* As long as the record contains credible evidence upon which the trial court could have formulated its beliefs, this court will not substitute its judgment for that of the trial court. *Id.*

We also presume that the trial court believed the testimony and evidence consistent with the judgment. *Mills v. Mills,* 939 S.W.2d 72, 75 (Mo.App.1997).

 The trial court found that there was a change in circumstances in that Gina and her mother moved from Nevada, Missouri to St. Louis, Missouri. It did not order a change of custody, however. Not every change of circumstances necessitates a change of custody. In order for a change in custody to be appropriate, the change of circumstances must be such that changing the custody of the child would substantially benefit the child. *M.F.M. v. J.O.M.,* 889 S.W.2d 944, 956 (Mo.App.1995). The trial court found that it was in Gina's best interests to remain with her mother. There is substantial evidence in the record to support this decision and the decision is not against the weight of the evidence. The trial court's order reflects that the court properly took into account the statutory factors enumerated in § 452.375 in making its decision. *Cook,* 916 S.W.2d at 413. In the decree of modification, the trial court stated:

> With respect to custody the court heard much testimony from very well qualified mental health care providers. Most of that evidence was directly contradictory. The difference in the opinions of the mental health care providers seems to be most affected by the quality of information which they were given. Since the court is not in a position to judge the credibility of the data given to the mental health care providers. The court is therefore left to its own observations as to determine what is in the best interest of the child.

> The court heard testimony form [sic] the Father and each of his witnesses, to the effect that when the child was in his custody she was depressed, clingy and withdrawn. The Mother's witnesses on the other hand testify that the child, while in the presence of the Mother is bright, happy and out-going. The child does well in school and seems to be well adjusted to school and community.

> The statute gives the court a number of relevant factors to consider to determine the custody in the best interest of the child. Looking at each of those the court finds that both parents desire custody of the child and the child has expressed a desire to live with both of the parents. With respect to the interaction and interrelationship of the child with others in her life she has a large extended family with both Mother and Father. With respect to the mental health of the individuals involved there is a history of mental health problems including alcoholism and passive aggressive personality disorder on the part of the father. In addition there is evidence of past domestic violence on the part of the father. There is no such mental health history with respect to the mother.

> Far and away the most important factor to this court, is the need of the child for a continuing relationship with both parent and the ability and willingness of the parents to perform functions as mother and father for the needs of the child. In this case there was uncontradicted testimony that the child expressed a strong desire to be involved in a school activity involving the Christmas program. That father was given approximately 2 months advance notice. Further, Mother suggested two different alternatives to allow the child to be involved. The father either refused to co-operate, or even worse, coerced the child into not being involved. This incident tells the court much about who is the parent that is most likely to look to the needs of the child and foster an on-going relationship with the absent parent.

There is evidence in the record to support these findings. Gina's report card states that Gina had adjusted well to the move. Gina's teacher wrote Terry that Gina is "personable and friendly," that she was making friends with the other girls in the class, that she was doing satisfactory grade level work and that she appeared happy. There is evidence supporting the trial court's findings concerning Gary's mental health. Gary has a history of mental health problems, including alcoholism and passive-aggressive personality disorder. There is evidence that during the marriage Gary was physically abusive to Terry on occasion. While we could argue that

Terry's uncontradicted testimony about the Christmas program was overblown by the trial court, we are reluctant to say the trial court could not evaluate the evidence as it did.

Gary complains that Terry neglected Gina's emotional well-being and that this is a reason to change custody. Terry concedes that the emotional well-being of a child should be a factor to consider in determining whether to change custody. She argues, however, that the record here contains ample evidence to support the finding by the trial court that there should be no change in custody. As evidence of Gary's contention, he relies upon testimony of his expert witnesses that Gina should undergo therapy because Gina was depressed. The trial court rejected the experts' testimony. It was for the trial court to decide what weight to give such testimony because the trial court is in the best position to judge the credibility of the witnesses and is free to believe all, part or none of the testimony of any witness. *Powell,* 948 S.W.2d at 156. There was also testimony that Gina is doing well in school and is a happy, cheerful child.

■■ Gary cites *Johnson v. Johnson,* 758 S.W.2d 721, 724 (Mo.App.1988) for the proposition that actions that are allowed or encouraged to place a child in danger may be considered in determining whether custody should be changed. The danger Gary complains of consists of Gina riding with Terry twice on a motorcycle. In *Johnson,* an eleven year old child was left alone every night to take care of two younger children and sent out on heavily-traveled streets to perform errands. *Id.* at 723. Moreover, there was testimony that the child suffered some verbal and physical abuse. *Id.* In addition, the child's education was neglected and he went without appropriate medical attention on occasion. *Id.*

The conditions of which Gary complains differ from those described in *Johnson.* The evidence established that Terry allowed Gina to ride with Terry on a motorcycle on two occasions and that Gary requested that Gina not be allowed to ride on a motorcycle. We agree that such rides could have been dangerous to Gina. However, there was no evidence that the motorcycle rides continued after Gary's request. There was testimony in the record that Terry also takes care for Gina's safety.

Gary also argues that the trial court erred in finding that Terry was the parent more likely to foster meaningful contact by the child with the other parent. We agree that the move to St. Louis was certainly not calculated to enhance the meaningful contact of Gina with Gary. However, we cannot say that the fact of the move itself shows that Terry will refuse to cooperate with visitation requirements. As of the time of the hearing, Terry had complied fully with the revised visitation schedule, meeting with Gary in Lebanon to exchange Gina for Gary's alternating weekend visitation. Gary also claims that Terry does not discuss important decisions affecting Gina with him. The evidence, however, contains evidence that Terry attempted to accommodate Gary with regard to visitation and keep him informed of important events in Gina's life.

There is evidence in the record supporting the trial court's determination that Terry's continuing custody of Gina is in Gina's best interests. Point II is denied.

### ATTORNEYS' FEES

■■ The trial court found that Terry had been caused to expend in excess of $5,000.00 for attorneys' fees. Gary was ordered to pay $3,500.00 of these fees. Gary complains that the trial court failed to follow the command of § 452.355.1 to consider "all relevant factors" in deciding whether and to what extent to award attorney fees. The two relevant factors Gary claims the trial court ignored were (1) the conduct of the parties as it related to the expenditure of fees and (2) the financial resources of the parties.

■■ The trial court has broad discretion in making awards of attorney fees in dissolution and related proceedings. *Crotty v. Kline,* 947 S.W.2d 121, 124 (Mo.App.1997). This court will not overturn an award of fees unless the party challenging the award can demonstrate an abuse of discretion on the part of the trial court, i.e. that the award was against the logic of the circumstances and

that it is so arbitrary and unreasonable so as to shock one's sense of justice. *Id.* (*quoting Ansevics v. Cashaw,* 881 S.W.2d 247, 250 (Mo.App.1994)).

Gary relies on *In re Marriage of Myers,* 845 S.W.2d 621, 626 (Mo.App.1992), for the proposition that one of the relevant factors in awarding attorney fees is the extent to which those fees are incurred because of the opposing party's conduct. Pointing to Terry's previously unannounced and sudden move with Gina to St. Louis, Gary reasons that the trial court must have ignored all evidence of conduct to have ordered him to pay a portion of Terry's fees. Gary argues that he was forced to seek modification on account of Terry's relocation to the other side of the state. In an effort to show that his motion for modification was necessary, Gary repeats his prior argument that the evidence showed that the move had an adverse effect on Gina and was contrary to her wishes.

We recognize that the sudden move to St. Louis, which Gina apparently did not favor at the time, and which dramatically changed Gina's life as well as the practicalities of visitation, was provocative to Gary's litigation to a large extent. Before deciding whose conduct required the expenditure of legal fees, the trial court should have taken into account the extent to which Terry's move created a situation sufficiently unsettled to afford a reasonable basis for modification. We have no reason, however, to conclude that the trial court did not consider these circumstances in deciding the question of fees. The fact that it was not unreasonable for Gary to seek modification does not require a conclusion that Terry's move *compelled* Gary to seek modification as to custody in order to protect his right to frequent and meaningful contact with Gina. During the move, Terry telephoned Gary and informed him as to the changed situation. Soon thereafter, Terry informed Gary of her new address and telephone number. The terms of the decree required no more of Terry. Terry remained within the state of Missouri and continued to be subject to the enforcement powers of the court. While Terry's unannounced relocation to St. Louis was a relevant factor to consider in deciding which party's conduct necessitated the expenditure of fees, it was not dispositive. The trial court's award of fees to Terry does not prove that the trial court ignored this factor in making its decision.

We do not agree with Gary's allegation that the trial court's award of fees necessarily betrays a lack of attention to the financial resources of the parties. According to Terry's Form 14, which the trial court adopted, Terry's monthly gross income was $1,558.00 while Gary's was $1,760.00, a difference in income of $202.00 a month. Gary contends that, after including child support payments received from Gary in the calculations, Terry's monthly income ($1,900.00) is higher than Gary's monthly income minus his monthly child support payment ($1,418.00). We disagree with this conclusion. First, Terry, as the custodial parent, is deemed to expend her monthly child support obligation directly in caring for Gina as primary custodian. Form 14, Comment A. By deducting the amount of child support he pays from his monthly income while not similarly calculating Terry's monthly income, Gary overstates Terry's monthly income. Second, the child support paid by Gary to Terry is for the support of Gina, and is therefore not available for the payment of legal fees. Subtracting the monthly amounts Terry and Gary are obliged to pay for Gina's support ($302.00 and $342.00), Gary's monthly income is still $162.00 more a month than Terry's income. Thus, the record does not demonstrate that Terry's monthly net income was higher than Gary's.

In our prior discussion of conduct relating to litigation costs, we concluded that Gary's motion to modify the custody arrangement was not an unreasonable response to Terry's sudden and dramatic move 250 miles to a far portion of the state. Terry herself conceded in her countermotion for modification that the move was a substantial and continuing change in circumstances, and, among other things, sought modification of terms of the original decree that were rendered facially impractical by her move to St. Louis. The parties were entitled to seek a more formal and stable modified arrangement.

A relevant factor in the trial court's decision to award fees is the identity of the issues necessitating the expenditure of fees and who raised and developed those issues. *Leone*, 917 S.W.2d at 616. The principal issues litigated in this case were (1) whether Gina's best interests would be served if Gary became her physical custodian, (2) whether Gary should receive child support to the extent he had extended periods of visitation, and (3) whether Terry should receive more summer visitation if she retained physical custody over Gina. The second issue, summer child support for Gary, was introduced and developed by Gary, and that only to a very limited extent; Terry did not dispute that Gary incurred child care expenses during the summer. The third issue, increased summer visitation for Terry, was introduced and developed, but only minimally, by Terry; Gary disputed Terry's evidence only to the extent of testifying that he thought that he should receive more summer visitation if he did not gain physical custody of Gina. This issue was resolved in favor of Gary and Terry did not cross-appeal.

The most significant issue in the case was the question of whether a change in physical custody from Terry to Gary would be in Gina's best interests. This issue was introduced by Gary and formed the basis of Gary's motion to modify. Both parties vigorously contested this issue, although Gary did more to develop this issue during trial. The determination of Gina's best interests was crucial to the resolution of Gary's motion to modify custody, a motion we have already concluded was not unreasonable under these circumstances. However, the decision to use the motion to modify to change physical custody, as opposed to the less dramatic purpose of alteration and clarification of visitation arrangements, did not follow as naturally from the circumstances created by Terry's move. While Gina's close ties to the Nevada area and her lack of any prior connection with St. Louis suggest that Gary's intentions were sincere rather than opportunistic, it is nevertheless true that Gary was the party who placed physical custody of Gina at issue. In an attempt to show that Gina's best interests would be advanced by a change in physical custody, Gary alleged a wide array of problems with Terry's parenting skills and the move to St. Louis. Terry's case consisted almost entirely of refuting these allegations, some of which were marginally relevant and one of which (i.e., Gina's academic performance since the move) was relevant but contrary to the greater weight of the evidence. In terms of conduct relating to litigation, the trial court thus could reasonably have concluded that there was substantial evidence supporting a partial award of fees to Terry.

Section 452.355 requires the trial court to consider "all relevant factors" in deciding whether to award fees, and specifically mentions the "financial resources of both parties" as one of those relevant factors. The trial court is required to consider the financial resources of both parties before awarding fees. *Nix v. Nix*, 862 S.W.2d 948, 952 (Mo.App.1993). As we noted above, there was evidence in the record as to the monthly incomes of both parties. The trial court found that Gary's gross monthly income was $202.00 a month greater than Terry's and that his net monthly income (after subtracting his child support obligation) was $162.00 greater than Terry's, findings supported by the record. Gary's net yearly income is therefore $1,944.00 greater than Terry's. The trial court explicitly found that the amount of Terry's legal fees ($5,000.00) was reasonable, and that Terry was incapable of paying her fees. Greater ability to pay legal fees is a sufficient basis on which to order a party in a modification proceeding to pay the attorney's fees of the other party. *See Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979). Gary's greater ability to pay fees is marginal, however, and could not on its own support more than a partial award of the $5,000.00 in fees. The principal issue litigated at trial, the change in physical custody as it related to the best interests of Gina, was raised and developed almost entirely by Gary and as to that issue he did not prevail. He did prevail on other issues. In this circumstance, we believe that a partial award of the attorney's fees of Terry was justified. However, even deferring to the trial court's discretion as much as we can, we conclude that an award of attorney's fees in

excess of $2,500.00 under these circumstances was an abuse of discretion. The attorney's fee award is ordered reduced from $3,500.00 to $2,500.00.

## CONTINUANCE

Gary, in Point IV, argues that the trial court erred in granting a continuance that resulted in a lengthy break in the trial. The first day of the hearing on the motion for modification was October 2, 1996. On that day, October 2, 1996, Gary's attorney asked the trial court for another court date when it appeared that the trial would continue into the evening hours. He later informed the court that his co-counsel could finish that day. Terry's attorney then informed the court that he could not continue into the evening. The trial court mentioned several open dates, November 1st, 6th, 7th, and 8th, but Gary's attorney had scheduling conflicts and rejected these dates. He did not object when the case was continued until late November. After agreeing to the continuance, Gary's attorney asked the court how much it would remember. The judge mentioned that he still remembered the case from the first time that it was tried, in March 1996. On the second day of the hearing, November 26, 1996, the judge asked the parties to refresh his recollection about Gary's day care costs. Gary claims that he was prejudiced by the delay because this indicates that the trial judge could not remember the amount of Gary's child care costs from the first day of the hearing. Gary argues that we can infer that the trial court "forgot much of the evidence from October 2, 1996." Gary argues that the "nuances" of evidence were gone. His evidence was presented primarily on the first day of trial. He claims that the court ignored his testimony of "deprivation of a large amount of visitation."

"As a general principle, the grant of denial of a continuance is largely within the discretion of the trial court." *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 207 (Mo. banc 1991). In exercising that discretion, the court should direct its attention toward the goals of fundamental fairness and the avoidance of an unfair advantage. *Mills v. Mills,* 939 S.W.2d 72, 74 (Mo.App.1997). Gary does not demonstrate that the court abused its discretion in the instant case. In the hearing on the motion for new trial, the trial judge indicated that he had written the decision himself. He demonstrated familiarity with the facts of the case. The decree of modification reflects the trial court's familiarity with the facts of the case. The trial court's decision in Terry's favor does not establish that the court forgot the evidence. Point is denied.

## CROSS–EXAMINATION OF EXPERT WITNESS

In his final point Gary contends that the trial court violated the Americans with Disabilities Act and the Code of Judicial Conduct, alleging that the trial court discriminated against him by refusing his attorney, who has a visual impairment, adequate time to review Terry's expert witness' report. Gary also complains of the trial court's action in limiting cross-examination of this witness, arguing that the trial court acted improperly by stating that if the witness missed her plane, it was on his [Gary's] tab. Gary accuses the court of forcing him to buy the privilege of adequate cross-examination. Gary cites no specific section of the ADA, nor does he inform the court of the standard for a violation of the ADA. He fails to direct us to any case law under either the ADA or the single section of the Code of Judicial Conduct upon which he relies. But because we can discern from his argument that his allegation is, in essence, an abuse of discretion claim, we consider it as such. In a civil action the scope and extent of cross-examination are within the discretion of the trial court. *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 868–69 (Mo. banc 1993). We will not disturb its decision unless an abuse of that discretion can be clearly demonstrated. *Id.*

Terry was allowed to call her expert witness, Dr. Ann Duncan, out of time at the November hearing. Gary's attorney began to cross-examine Dr. Duncan, a psychologist. Almost immediately after starting this testimony, Gary's attorney requested time to have Dr. Duncan's lengthy report read to him. The trial court granted counsel's re-

quest and asked how long it would take. Gary's attorney stated that it would take him at least twenty to thirty minutes to have the report (which involved a number of pages) read to him. He then anticipated extensive cross-examination. The trial court asked Dr. Duncan about her flight out of town. After Dr. Duncan stated that she had to leave at three o'clock, counsel immediately told the court "it's going to take at least two hours or more...." The following exchange was had:

THE COURT: Well, I'm going to tell you this. If she misses her plane tonight it's on your tab. I'm assessing her cost against you if she misses her plane tonight. If she's out of here by—

MR. CASKEY: Your Honor, are we on the record?

THE COURT: Yes, we are.

MR. CASKEY: Then if that be the case of this Court, then I have no further questions of this witness.

THE COURT: No. I'm—I'm not trying to cut you off.

MR. CASKEY: Well, you—Your Honor, you have cut me off.

THE COURT: Let me make myself clear. It is now ten minutes until two. If she is out of here by three o'clock, then you don't have any further problem. If she is—If she is out of here after—

MR. CASKEY: Your Honor—

THE COURT:—three o'clock and misses her plane, she's on your tab.

MR. CASKEY: Your Honor, based on those ground rules I have no further questions.

■ This exchange does not prove that the judge discriminated against counsel's vision impairment by failing to accommodate counsel's need for additional time. The court was willing, even without seeing how the cross-examination would proceed, one hour and ten minutes to examine the report and conduct cross-examination. Counsel contends the time allowed was not adequate, and counsel could be right about that; however,

counsel always has the responsibility to *demonstrate* that the time allowed is not adequate by proceeding in good faith in an effort to get as much as possible accomplished within the time allotted. Then, when the court cuts off counsel, counsel can then ask for more time, and, if time is denied, counsel can make a record as to the specific questions counsel would have pursued.[1] *Pollard v. Whitener*, 965 S.W.2d 281, 289 (Mo.App. W.D. 1998). Here, we can only speculate that the time allotted counsel was not sufficient. It cannot be demonstrated. Also, the trial court gave counsel another chance to object. The court later asked counsel, "Is there anything you'd like to say to the Court on the record?" Counsel replied, "No, Your Honor." After a discussion of the time that it took to get to the Joplin Airport, the court again asked counsel if he had anything that he would like to say on the record. Counsel once again stated, "No, Your Honor."

At the hearing on Gary's motion for new trial, the judge indicated that he had restricted the cross-examination time in response to a previous remark made by counsel that his cross-examination of the witness would take a long time. The judge was explaining that he had assumed that counsel planned an abusive tactic rather than a good faith examination. This no doubt had been evident at the time to Gary's attorney, who took offense at the court's tone and demeanor, as well as the ruling. Even when an attorney has reason to be upset or frustrated, however, the attorney must persevere with the case to whatever extent the court allows, and then make a record. When attorneys do not do so, it is impossible for this court to determine whether any prejudice occurred.

Even if there were an abuse of discretion on the part of the trial court, Gary does not demonstrate how he was prejudiced by the trial court's action. Gary's attorney chose not to pursue further cross-examination of Dr. Duncan. Counsel could have continued until being cut off. There being no showing as to the additional evidence Gary would

---

1. The duty incumbent on the appellant to preserve an allegation that the trial court erred in limiting cross-examination is similar to the duty to preserve the allegation that the trial court

erred in limiting jury voir dire, discussed extensively by this court in its recent decision in the case of *Pollard v. Whitener,* 965 S.W.2d at 289 (Mo.App.W.D. 1998).

have presented if the time had been extended, *see L.J.B. v. L.W.B.*, 921 S.W.2d 23, 27 (Mo.App.1996), we deny this point.

### Conclusion

The trial court order denying a change of custody is affirmed. The court's order of child support is reversed, and the case is remanded with instruction for the trial court to consider whether child support should be abated during the extended summer visitation, and to make a written finding and order in that regard. The court shall not take any additional evidence. The court's award of attorney's fees to Respondent Terry Patton in the amount of $3,500.00 is reversed, and this court orders an award of attorney's fees to Respondent under Rule 84.14 in the amount of $2,500.00.