Richard D. BURKHART, Appellant,

v.

Elisabeth A. BURKHART, Respondent.

No. WD 48229.

Missouri Court of Appeals,
Western District.

March 29, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 1994.

Application to Transfer Denied
June 21, 1994.

William E. Simmons, Clinton, for appellant.

Harold L. Caskey, Butler, for respondent.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant, Richard D. Burkhart (Richard), appeals the order of the trial court dissolving his marriage from respondent, Elisabeth A. Burkhart (Lisa). Richard complains specifically of the court's award of custody and attorney fees.

Richard and Lisa were married on February 22, 1992. On March 29, 1992, a son, Joshua, was born to the parties. Seven months after their marriage, on October 18, 1992, Richard and Lisa separated. In its Amended Judgment and Decree of Dissolution filed August 10, 1993, the trial court dissolved the marriage of the parties and awarded joint legal and physical custody of Joshua to Richard and Lisa. Joint physical custody was to be exercised by one of the parties having actual physical custody of Joshua for a period of three months and then the other party having actual physical custody for three months, and alternating thereafter until Joshua is enrolled in preschool or kindergarten at which time Lisa is to assume actual physical custody during the school year with Richard having actual physical custody for eight weeks in the summer. Among other matters, the trial court awarded judgment in favor of Lisa and against Richard in the amount of $3,500 as and for partial payment of her attorney fees.

Richard argues first that the trial court erred in awarding joint legal and physical custody. Richard argues that the trial court's order in this regard is not in Joshua's best interest and is against the weight of the evidence. Richard argues that the evidence reflects that Lisa is not suited to have actual physical custody, that she is immature, could not hold down a job, and that she is emotionally and mentally unstable. Richard argues further that he is better suited to have actual physical custody of Joshua and that the trial court made an impermissible presumption that children of tender years are best placed in the physical custody of the mother.

■ In reviewing a court-tried dissolution case, the appellate court must sustain the trial court's decree unless there is no substantial evidence to support it, it is against the weight of the evidence, or it

erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Gulley v. Gulley,* 852 S.W.2d 874, 876 (Mo.App.1993). An award of child custody should not be disturbed unless the appellate court is firmly convinced that the welfare of the child requires some other disposition. *Gulley v. Gulley,* 852 S.W.2d at 876. Accordingly, in child custody proceedings the determination of the trial court is given greater deference than in any other type of case. *Id.*

■ Furthermore, a trial court is free to believe or disbelieve all, part, or none of the testimony of any witness. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989). When determining the sufficiency of the evidence, an appellate court will accept as true the evidence and inferences from the evidence that are favorable to the trial court's judgment and disregard all contrary evidence. *Id.*

■ On appeal, it is presumed that the trial court reviewed all the evidence and awarded custody in light of the best interest of the child. *Hartig v. Hartig,* 738 S.W.2d 160, 161 (Mo.App.1987). "This presumption is based upon the trial court's better position to judge not only the credibility of the witnesses and parties directly but also their sincerity, character, and other trial intangibles which might not be completely revealed by the record." *Id.*

### PHYSICAL CUSTODY [1]

■ The record reflects that at the time of their marriage, Lisa was 19 years old and Richard was 21 years old. Lisa was eight months pregnant at the time of their marriage. The marriage was of short duration and ended with Richard telling Lisa that he did not love her any longer and wished to end their marriage.

After graduating from high school and during the marriage, Lisa changed jobs several times and always held positions paying minimum wage. Richard on the other hand remained fairly steadily employed. Prior to her marriage to Richard and as a result of

the dissolution of the marriage of her parents, Lisa suffered from depression and at one point received in-patient therapy for a period of approximately 30 days. However, there was expert testimony presented from Dr. Jerry Morris, a clinical psychologist, which established that the depression Lisa suffered from the breakup of the marriage of her parents was a transient situational depression from which she had recovered. Dr. Morris further testified that Lisa had a normal personality profile, that she suffered from no mental disorders, and that she was not in need of treatment. Dr. Morris testified that Lisa was a strong person and that she had been able to handle significant stress from the breakup of her marriage. Dr. Morris found nothing in Lisa's mental or emotional state that would place Joshua in jeopardy by being under her control.

Richard complains that Lisa lied under oath and that her morals and values do not recommend placement of Joshua with her. Richard totally ignores the fact that there was evidence from which the trial court could find that he too lied under oath on more than one occasion, that prior to his marriage to Lisa he impregnated another girl for whom he paid for an abortion, that at the time of his marriage to Lisa she was eight months pregnant, that during his short marriage to Lisa he was romantically involved with Lisa's best friend, who was married to a friend of Richard's, and that Richard failed to report his income accurately to the Internal Revenue Service.

■ Richard bases his argument that the trial court made an impermissible presumption that children of tender years are best placed with the mother on the fact that in its decree the trial court stated as follows:

> The Court in giving consideration to the recently published document on gender bias in the Courts and court system does order that the attorney fees of Respondent in the sum of $3500.00 shall be paid by the Petitioner for which judgment is hereby given against the Petitioner. The ability

1. We address separately Richard's arguments that (1) Lisa was not suitable to have actual physical custody and (2) the trial court erred by awarding joint legal custody.

to pay of Petitioner is substantially greater than that of Respondent.

The significance of this statement of the court is discussed subsequently in this opinion. Nonetheless, regardless of what the court meant in referring to the "document on gender bias," the statement does not support Richard's argument of an impermissible tender years presumption.

The record does not support Richard's argument that he is better suited than Lisa to have actual physical custody of Joshua.

Next, in regard to physical custody, Richard argues that the trial court erred by alternating actual physical custody on a three month basis because such frequent changes are not in Joshua's best interest.

Section 452.375, RSMo Supp.1993, provides, in pertinent part, as follows:

1. As used in this section, unless the context clearly indicates otherwise:

(1) "Joint legal custody" means that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority;

(2) "Joint physical custody" means an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent and continuing contact with both parents.

\* \* \* \* \* \*

3. The general assembly finds and declares that it is the public policy of this state to assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage, and that it is in the public interest to encourage parents to share decision-making rights and responsibilities of child rearing. In order to effectuate this policy, the court shall determine the custody arrangement which will best assure that parents share such decision-making responsibility and authority and such frequent and meaningful contact between the child and each parent, as is indicated in the best interests of the child under all relevant circumstances.

4. Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

(1) Joint custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint custody award;

(2) Sole custody to either parent; or

(3) Third party custody or visitation ...

■ The Missouri legislature has clearly stated that it is the public policy of Missouri to assure children frequent and meaningful contact with both parents after dissolution of their parents' marriage. The courts are required to consider joint custody as the first option, even if it is opposed by one parent. *In re Marriage of Barnes*, 855 S.W.2d 451, 455 (Mo.App.1993).

■ Short term custody arrangements are not necessarily against the best interest of a child. In *Gulley v. Gulley*, 852 S.W.2d 874, 876 (Mo.App.1993), the court approved a joint custody plan, in regard to a seven-year-old child, which provided for the mother to have actual physical custody eight days a month and the father actual physical custody the balance of each month. Certainly, children going from one parent to another on weekends, holidays, and for extended periods in the summer months are also common arrangements. If there is to be "frequent and continuing contact with both parents" as specified in section 452.375.1(2), disruption is unavoidable. *In re Marriage of Johnson*, 865 S.W.2d 412, 417 (Mo.App.1993).

■ In the case at bar, there is nothing in the record to show that the three month rotation until Joshua is attending school would be detrimental to his best interest. Although both parents have their shortcomings, they have each exhibited their love for their child and their desire to play a meaningful part in his upbringing. It is imperative that Lisa and Richard learn to cooperate

and put their feelings toward each other aside in the best interest of their son. Any custody plan established by the courts will only be as successful as the parties are willing to make it.

The trial court was in a better position to judge the character, sincerity, and concern of the parties for the well-being of their child than this court is on appeal. We do not find that the trial court's award of joint physical custody failed to consider the best interest of Joshua.

## JOINT LEGAL CUSTODY

In addition to his challenge to the court's award of joint physical custody, Richard challenges the court's award of joint legal custody as not being supported by the evidence.

■ The preference for joint custody as stated in section 452.375 " 'is not that of a forced joint custody in order to induce the parents to find a common ground.'... Rather, it is a preference 'in favor of parents who show the willingness and ability to share the rights and responsibilities of child-rearing even after they have dissolved the marriage.' " *In re Marriage of Johnson*, 865 S.W.2d at 417 (quoting *Margolin v. Margolin*, 796 S.W.2d 38, 49 (Mo.App.1990)).

■ There must be substantial evidence to support an award of joint custody. *Id.* Where the record is devoid of substantial evidence that the parties have a commonality of belief concerning parental decisions and the willingness and ability to function as a unit in making those decisions, it is error for the trial court to award joint legal custody. *Id.*

■ The record in the case at bar does not establish a commonality of belief between the parties concerning parental decisions. The marriage was short lived and acrimonious, involving infidelity and breach of trust. The parties could not even agree on appropriate visitation between themselves. The dissolution action was bitter and protracted. The trial covered four days and 983 pages of transcript. There were also volumes of exhibits presented. It is apparent that in the best interest of the minor child and the par-

ties, the hostility between the parties needs to be concluded.

■ In the interest of laying litigation to rest, Rule 84.14 permits the appellate court to give judgment as the trial court ought to have given under the circumstances. *Grunden v. Nelson*, 793 S.W.2d 569, 576 (Mo.App.1990). In the case at bar, since the three month change of physical custody was only to be effective until the child is enrolled in school or a pre-school program and then the child is to be in the physical custody and control of the mother during the school year, we believe that actual legal custody should have been awarded to the mother.

The judgment of the trial court in regard to joint legal custody is reversed.

## ATTORNEY FEES

In his final point, Richard argues that the trial court erred by entering judgment against him for a portion of Lisa's attorney fees. Richard contends that in doing so the court improperly relied on "the recently published document on gender bias in the courts and court system," because the disparity between the financial and economic circumstances of the parties was minimal and because the marriage was of short duration.

■ The trial court is vested with broad discretion in awarding attorney fees and abuse of discretion is a prerequisite to overturning such an award. *Mabon v. Mabon*, 833 S.W.2d 488, 489 (Mo.App.1992).

■ It is not clear what the court was referencing in regard to "the document on gender bias." We assume the trial court was referring to the "Report of the Missouri Task Force on Gender and Justice." Nonetheless, this report is not part of the record and in light of the fact that the court specifically found that "[t]he ability to pay of Petitioner is substantially greater than that of Respondent," we consider the reference to the "document on gender bias" as surplusage.

The record reflects that Lisa had only completed high school and that she had a poor academic record. Lisa's only employment had been at minimum wage jobs. Her

income has been substantially less than Richard's in the past.

Richard had completed a year of college, he had a pilot's license and was trained as an airplane mechanic. Richard was currently employed making approximately $1 an hour more than Lisa. Furthermore, this was a protracted proceeding which covered four days of hearing and almost 1,000 pages of transcript. Much of the protraction was brought about by Richard's insistence that Lisa was a troubled person who should not have custody of their son, a proposition that the trial court found not to be substantiated. In the light most favorable to the trial court's judgment, Lisa's expense in pursuing this matter was to some extent effected by the fact that Richard required that Lisa leave their home at the time of their separation, Richard did not provide her with support, left her without transportation, filed for dissolution at a time when Joshua was in his custody, and thereafter denied Lisa meaningful visitation.

Lisa's total attorney fees were $7,850. We do not find it an abuse of discretion under the facts and circumstances of this case for the trial court to have awarded Lisa attorney fees in the amount of $3,500.

The judgment of the trial court in regard to joint legal custody is reversed and in all other respects the judgment of the trial court is affirmed. This cause is remanded for the trial court to enter judgment consistent with this opinion awarding legal custody to Lisa.

All concur.