Shelley Sue **SIMON–HARRIS**, Appellant–Respondent,

v.

Mark Jon **HARRIS**, Respondent–Appellant.

Nos. WD 62960, WD 63168.

Missouri Court of Appeals, Western District.

July 13, 2004.

Brian Sleeth, Columbia, MO, for appellant-respondent.

Mary–Corinne Corley, Kansas City, MO, for respondent-appellant.

Before JOSEPH M. ELLIS, C.J., THOMAS H. NEWTON and LISA WHITE HARDWICK, JJ.

THOMAS H. NEWTON, Judge.

Ms. Shelley Sue Simon–Harris and Mr. Mark Jon Harris appeal the judgment of the trial court dissolving their marriage. Both parties appeal the child support award. Because the trial court did not follow the two-step procedure for determining child support, we must reverse. Ms. Simon–Harris appeals the award of joint physical custody and the parenting schedule, claiming that the trial court did

not issue the required findings and that its judgment was not in the child's best interest. In this instance, the parties had agreed to the custody arrangement, so written findings were not required. We further find that the parenting schedule is in the child's best interests. But the trial court did not provide a proper parenting plan. We affirm that portion of the decree setting out custody and the schedule, but we reverse for a new parenting plan. Mr. Harris appeals the grant of the dependency exemption to Ms. Simon–Harris and the award of money to her for a dispute over the exemption in 2002. Because the trial court did not abuse its discretion in granting Ms. Simon–Harris the exemption and because there was sufficient evidence to support awarding her the money she lost when she could not claim the exemption in 2002, we affirm that portion of the decree. We affirm in part and reverse in part.

I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Simon–Harris and Mr. Harris were married on September 6, 2001, and they separated that same day. One child was born of the marriage, Earen[1] C. Harris, on February 26, 2002.

The parties never established themselves in one home together. Ms. Simon–Harris resided in Columbia, Missouri, before and after the marriage. Mr. Harris resided in Calumet, Michigan, both before and after the marriage. According to Mr. Harris, they had agreed that Ms. Simon–Harris would move to Michigan, but she later declined. On October 11, 2002, Ms. Simon–Harris filed a petition for dissolution of the marriage. Because the parties never lived together or combined their re-

sources, there was no marital property or debt to divide. The only issues during the dissolution action, and on appeal, relate to Earen.

Ms. Simon–Harris has been employed by Kraft Foods for thirteen years, and has worked at the Columbia facility for approximately four years. She works three days a week in Columbia and two days a week in Kirksville. Michigan Tech University employs Mr. Harris and he has custody of his two daughters from his prior marriage, Lori and Rana. Lori was 18 at the time of trial and Rana was 16.

Mr. Harris traveled to Columbia the day after Earen's birth. Shortly after Earen's birth, Ms. Simon–Harris went to Michigan and stayed with Mr. Harris for awhile so that he could spend time with Earen. They also traveled together to Colorado at that time, along with Lori and Rana, to visit some relatives.

When Ms. Simon–Harris returned to Columbia, Mr. Harris did not see Earen that many times. Ms. Simon–Harris maintains that he only requested visitation three times and that she denied him once, and only because she had made plans for Earen to see other relatives. She also claims that he would not give her much notice for the requested visitation. She claims that the only other efforts Mr. Harris made to see Earen consisted of him showing up unannounced at her door and staying only ten to fifteen minutes. Mr. Harris, on the other hand, claims that Ms. Simon–Harris made it difficult, if not impossible, for him to see Earen. She would not allow him to have any overnight visitation or to see Earen alone, and she denied his requests to see Earen. He states that

---

1. The parties do not appear to be in agreement about the proper spelling of the child's name. It is spelled both Earen and Earin throughout the trial and appellate record, including on official documents such as tax returns. Because we do not know which is the correct spelling, for consistency we will spell his name "Earen" throughout this opinion.

he showed up unannounced because that was the only way he could have any time with Earen and that he simply gave up trying to get her to allow him to have any visitation because she was so uncooperative.

The parties also dispute whether Mr. Harris made any financial or material support for Earen. Ms. Simon–Harris claims that he made no effort, although she says nothing about what type of support Mr. Harris provided during the time that they were all together shortly after Earen's birth. Mr. Harris claims that he provided total support for Earen and Ms. Simon–Harris during the two months they were together. He also asserts that he sent her one check for $200, which she never cashed. She denies ever receiving this check. And he claims that he sent some clothes and toys.

In the petition for dissolution filed by Ms. Simon–Harris, she requested joint legal custody and primary physical custody subject to Mr. Harris' rights of reasonable visitation. In her proposed parenting plan, she stated that Mr. Harris would be awarded reasonable residential time as the parties agree to it, but he could not have any overnight visitation until Earen reached the age of five. However, during the trial, she withdrew the plan. In Mr. Harris' response to the petition, he requested joint legal custody too, but also primary physical custody.

By agreement of the parties, a temporary custody and child support arrangement was adopted by the trial court. Under that temporary order, the parties were awarded joint legal and joint physical custody. Under the physical custody schedule, Mr. Harris would have physical custody of Earen for the first week of each calendar month, from Sunday to Sunday, and he would pay $400 a month in child support; and Ms. Simon–Harris had physical custody of Earen for the remainder of the month. The parties agreed to meet in Rockford, Illinois, to exchange Earen.

The trial court took judicial notice of the entire file, which included the hearings on temporary custody and the temporary order. During trial, the parties made multiple accusations against each other either to show unfitness as a parent or to demonstrate an intention not to cooperate about sharing custody of Earen. Two accusations are specifically mentioned in the appellate briefs. Ms. Simon–Harris testified during trial that when they traveled to Colorado together, Mr. Harris got very angry and after they stopped at a hotel she saw him smoking marijuana. Mr. Harris denied smoking marijuana at any time since he had been married to Ms. Simon–Harris, including during the trip to Colorado. Ms. Simon–Harris also discussed an e-mail she received from Mr. Harris that said, "I hate everyone, including you." She said that this e-mail made her very uncomfortable with allowing Mr. Harris to have overnight visits with Earen. Mr. Harris testified that he sent that e-mail to Ms. Simon–Harris in response to something she had said and because he was upset with her since she would not let him see Earen.[2]

In discussing custody and visitation during trial, Ms. Simon–Harris asked the trial court to grant them joint legal custody of Earen and to name her as the primary residential custodian or primary physical custodian. She also said that she would like to retain the current schedule with Mr. Harris having Earen for the first week

2. At a different point in the transcript Mr. Harris claims he wrote an adaptation of a poem from Virgil's Aeneid, but it is not clear whether that refers to the statement "I hate everyone, including you" or if it refers to some other e-mail that he sent her.

of each month, only changing the trade-off day from Sunday to Saturday. As for Mr. Harris, he asked for primary custody. He stated that if he was not awarded primary custody then he wanted Earen for two weeks a month. Both parties also filed several different Form 14[3] worksheets.

During trial, there was disagreement over who was entitled to claim Earen as a dependent in 2002. Both parties believed they were entitled to claim Earen based on the amount of time that they were responsible for him. Mr. Harris filed his tax return first using an online service and he claimed Earen for two months, based on the time that Ms. Simon–Harris was with him in Michigan and Colorado. The online form gave him credit for the full twelve months. Ms. Simon–Harris was not able to claim Earen at all. Mr. Harris testified that by claiming Earen he received an additional tax benefit of $1,200.[4] When Ms. Simon–Harris informed Mr. Harris that she was not able to claim Earen, Mr. Harris sent her $1,000, which was five-sixths of the benefit he received by claiming Earen. Ms. Simon–Harris claims that because she was unable to claim Earen as a dependent on her taxes, she lost $2,914. She entered an exhibit listing what her federal and state refunds would be if she could claim Earen and what her state refund would be and what she would owe in federal taxes if she could not claim Earen. She also included a copy of her taxes with Earen claimed as a dependent. Mr. Harris objected to the exhibit's admission because it was speculative and based on hearsay as to what she would have received. The trial court admitted it "more as a demonstrative exhibit on what she's asking."

The trial court found both parents fit and proper custodians and granted the parties joint legal and physical custody of Earen until he enters school, subject to the parenting plan. Physical custody of Earen was ordered to alternate between the parties for two-week periods, with the transfer to be every two Saturdays in Rockford, Illinois, each party to pay their own travel costs. Both parties were ordered to maintain health insurance for Earen. Ms. Simon–Harris was ordered to pay $173 per month in child support to Mr. Harris. Ms. Simon–Harris was given head of household status and allowed to claim Earen as a dependent on her tax returns. The trial court ordered Mr. Harris to pay Ms. Simon–Harris $1,914 for tax relief from the 2002 dependency claim dispute. The trial court found that there were no marital debts to be divided and no maintenance to be paid.

The parenting plan listed "standard orders for parenting" that laid out basic rules for each party to keep the other party informed about anything relating to Earen's care and to ensure that Earen maintains a good relationship with both parents. It also set out their legal responsibilities in sharing joint legal custody, in cooperating to implement the physical custody plan, and in keeping each other informed about the other's location and information concerning Earen.

Both parties appeal this ruling. Ms. Simon–Harris, as appellant, raises three points on appeal. In her first point she claims that the trial court's judgment was a misapplication of the law because when it ordered the parties to have joint physical custody it failed to consider the required factors under section 452.375.2[5] and to

---

3. Unless otherwise indicated, all rules and forms refer to Missouri Court Rules (2003).

4. The trial court found that he gained $1,750 from claiming Earen on his taxes.

5. Unless otherwise indicated, all statutory ref-

make the required written findings under section 452.375.6. In her second point she claims that the trial court erred in ordering the parties to have joint physical custody and exchange Earen every two weeks because that was not in Earen's best interest. In her third point she claims that the trial court erred in ordering her to pay $173 per month in child support because it did not determine for the record the presumed child support amount (PCSA) using Form 14 and did not consider whether to rebut that amount as unjust or inappropriate.

Mr. Harris agrees with Ms. Simon–Harris that the trial court erred in its award of child support because it did not adopt either party's Form 14 and did not make any findings on the record of the PCSA. He brings two points on his cross-appeal. His first point is that the trial court erred in awarding Ms. Simon–Harris $1,914 for the dispute over the tax exemption.[6] In his second point he asserts that the trial court erred in awarding Ms. Simon–Harris the annual dependency tax exemption.

## II. Legal Analysis

### A. Child Support

■ Because the parties agree about the error in the child support order, we address this issue first. When the trial court determines an award of child support, section 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set out in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. W.D. 1996), and approved by the Missouri Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997). *Conrad v. Conrad*, 76 S.W.3d 305, 308 (Mo.App. W.D.

2002). We review an award of child support under both the *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), standard and an abuse of discretion standard. *Emig ex rel. Emig v. Curtis*, 117 S.W.3d 174, 178 (Mo.App. W.D.2003). Initially, we review whether the trial court's application of the two-step procedure is not supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Id.* We then review the trial court's rebuttal review of the PCSA for an abuse of discretion. *Id.*

In the first step of the procedure to determine child support, the trial court must "find for the record the PCSA in accordance with Form 14." *Conrad*, 76 S.W.3d at 308. This can be done by the trial court either by accepting for the record one of the parties' Form 14 calculations or by rejecting those calculations and doing its own Form 14 calculation. *Id.* In the second step of the procedure, the trial court must consider all of the relevant factors listed in section 452.340.1 to determine whether the PCSA should be rebutted as being unjust or inappropriate. *Id.*

Ms. Simon–Harris asserts that the ordered child support of $173 per month does not meet this two-step procedure. She states that the trial court did not adopt any of the Form 14 calculations submitted by either party, did not reject them and draft its own Form 14 for the record, and did not consider whether the PCSA should be rebutted as unjust or inappropriate. Instead, the trial court simply set the child support amount at $173 per month and ordered Ms. Simon–Harris to pay that amount. Mr. Harris concedes this point in his brief. He states that the trial court

erences are to RSMo.2000.

**6.** The case law discussing the dependency exemption uses both the term "exemption" and the term "deduction." It is properly called

an exemption because that is what the federal code and federal tax forms call it, and we will refer to it as such.

reached a decision on the PCSA, but did not include its reasoning in the record, rendering it impossible to determine the basis for that amount.

By failing to apply the two-step procedure, the trial court erroneously applied the law. Because the trial court did not comply with the required two-step process, we have no way of knowing how it determined the child support amount or whether it rebutted that amount. Without an adequate record regarding the PCSA or a determination as to whether the PCSA is unjust or inappropriate, we must reverse this portion of the trial court's judgment. *Allen v. Allen,* 961 S.W.2d 891, 894 (Mo. App. W.D.1998). We remand with instructions that the trial court follow the two-step procedure in determining the correct amount of child support to be paid by either party.[7] *See id.* at 894–95. Ms. Simon–Harris' third point is granted.

## B. Child Custody and the Parenting Plan

Ms. Simon–Harris' first two points discuss the trial court's award of joint physical custody and the actual custody plan. We will affirm the trial court's judgment in a dissolution action unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Morse v. Morse,* 80 S.W.3d 898, 902–03 (Mo.App. W.D.2002). The trial court has broad discretion in awarding child custody, and we will affirm its decision unless we are firmly convinced that the welfare of the child requires a different disposition. *Loumiet v. Loumiet,* 103 S.W.3d 332, 336 (Mo.App. W.D.2003). We assume that the trial court made its custody determination in the child's best interests and we accord that decision more deference than we do decisions that do not involve child custody. *Patton v. Patton,* 973 S.W.2d 139, 145 (Mo. App. W.D.1998). The appellant has the burden of showing that the trial court erred. *Morse,* 80 S.W.3d at 903. The trial court makes credibility decisions about the witnesses' evidence and is free to believe all, part, or none of the testimony. *Patton,* 973 S.W.2d at 145.

Because the parties have always asked for joint legal custody, and the trial court's grant of joint legal custody is not being appealed, we are only concerned with the grant of joint physical custody and the actual physical custody plan. Ms. Simon–Harris basically has two complaints about the current physical custody situation. She first complains that the trial court did not comply with sections 452.375.2 and 452.375.6. She asserts that because the parties had not reached an agreement on an award of custody, the trial court was required to make written findings stating that the best interests of the child have been met by the current custody arrangement based on the relevant factors listed in section 452.375.2. Because the court did not do so, she claims that the decision must be reversed. Mr. Harris counters that the parties had agreed on a custody arrangement and that the only dispute was

---

7. Since we are remanding the child support determination, we want to correct a misunderstanding of the parties. During trial, Ms. Simon–Harris testified that in her Form 14 she gave Mr. Harris a 10% credit for his time with Earen, based on the assumption that he would get Earen for one week a month. She stated that 10% was the maximum credit he could get. This assumption is incorrect; the Form 14 instructions for line 11 state that "[i]f the parent obligated to pay support is or has been awarded periods of overnight visitation or custody of more than 109 days per year, the adjustment for that parent may be greater than 10%." This means the circuit court is not obligated to give a credit of more than 10%, but may do so in its discretion. *Hatchette v. Hatchette,* 57 S.W.3d 884, 891 (Mo.App. W.D.2001).

over parenting time. He claims that, therefore, section 452.375.6 did not apply to this situation and that there is no reason to reverse the decision. Ms. Simon–Harris then complains about the custody arrangement and the actual custody schedule, both because she entered extensive evidence about Mr. Harris' disinterest in Earen and to show why she is concerned about him having custody of Earen and because she believes that the current alternating plan is against Earen's best interests. Mr. Harris counters that the trial court was free to disbelieve Ms. Simon–Harris' evidence about his disinterest and prior actions and that Earen is having no problem with the current custody schedule.

1. **Written Findings**

   The trial court must determine custody based on the best interests of the child. § 452.375.2. The court must consider all of the relevant factors including:

   (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

   (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

   (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

   (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

   (5) The child's adjustment to the child's home, school, and community;

   (6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....

   (7) The intention of either parent to relocate the principal residence of the child; and

   (8) The wishes of the child as to the child's custodian.

§ 452.375.2. Section 452.375.6 provides:

   If the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child. If a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment or order detailing the specific relevant factors resulting in the rejection of such arrangement.

The public policy of this state is for children to have frequent, continuing and meaningful contact with both parents. § 452.375.4.

Ms. Simon–Harris claims that the parties did not agree on a custodial arrangement and that the court rejected their proposed custodial plan. She argues that because the court did not make any written findings detailing the specific relevant factors that made its custody ruling in Earen's best interest, the trial court failed to comply with section 452.375.6. Mr. Harris, on the other hand, claims that the parties had already agreed to being joint legal and physical custodians of Earen and that the only issue at trial was the parenting time division. So he maintains that there was no need for the trial court to

make written findings detailing how the custody arrangement was in Earen's best interests.

The parties were operating under the temporary order at the time of trial. Under that order, they had agreed to joint physical custody. At trial, however, the parties did not speak in terms of joint or sole physical custody; instead, they each requested primary physical custody. But the statute does not provide for primary physical custody, only joint or sole. § 452.375.1(1); *Loumiet*, 103 S.W.3d at 336, 338. So we are left to look at what exactly the parties were requesting, in consideration of the order already in existence, to determine if they were in agreement.

Joint physical custody awards each parent significant, but not necessarily equal, periods of time with the child. § 452.375.1(3). Mr. Harris requested primary physical custody or at least two weeks a month with Earen. We do not know what type of arrangement he wanted by asking for primary custody, but he had agreed to joint physical custody before and two weeks a month would give both parents significant time with Earen, so he clearly desired a joint physical custody arrangement. Ms. Simon–Harris said she wanted primary physical custody, but also said that she wanted to keep the physical custody schedule that was in place, where Mr. Harris had Earen for one week a month. Again, since we do not know what she meant by primary physical custody, we look to her requested schedule. She wanted to keep the plan under the temporary order and that plan provided for joint physical custody. So we find that the parties were in agreement about retaining the joint physical custody arrangement from the temporary order; we believe that when requesting primary physical custody, they merely wished for more time with

Earen. As Mr. Harris asserts, they were disputing only the parenting time division.

Section 452.375.6 requires written findings only when the parties do not agree on a custody arrangement or when the court rejects their custody arrangement, not when the parties cannot agree on a parenting plan or when the court rejects the parenting plan. There is no statutory requirement that the trial court make written findings when it rejects the parties' parenting plan. Sections 452.375.9 and 452.310.7 deal with parenting plans and section 452.375.9 merely requires that the court include a parenting plan that complies with section 452.310.7.

The bulk of testimony at trial about Earen's physical placement dealt with parenting time, and the parties were not in agreement about that. But because they were in agreement about the custody arrangement, written findings were not required under section 452.375.6. Ms. Simon–Harris' first point is denied.

## 2. Parenting Schedule

■ Ms. Simon–Harris then complains that the order of joint physical custody and the plan to alternate physical custody every two weeks are not in Earen's best interests. As for her claim that the order of joint physical custody is not in Earen's best interests, we have already determined that she was in agreement with Mr. Harris about the custody arrangement, including the grant of joint physical custody. So we will not now consider her claim that such custody arrangement is not in Earen's best interests.

But we do consider her claim that the parenting schedule, alternating every two weeks, is not in Earen's best interests. She focuses a great deal on evidence she presented to show that Mr. Harris is not interested in caring for Earen or would be dangerous. She particularly focuses on

her claim that she saw him smoke marijuana while they were traveling to Colorado, the e-mail, the lack of financial support before the court-ordered child support, and the few requests for visitation. But she is focusing only on evidence that is unfavorable to the trial court's ruling. We view the evidence, and the inferences drawn from that evidence, in the light most favorable to the judgment. *Patton*, 973 S.W.2d at 145. Her basis for the claim that the parenting schedule is inappropriate concerns issues of credibility. There was conflicting testimony on all of these matters. "[W]e defer to the trial court on matters of witness credibility, and it is free to believe or disbelieve all or none of mother's and father's testimony. When conflicting evidence exists, we defer to the trial court's assessment of the evidence." *Cutting v. Cutting*, 39 S.W.3d 540, 543 (Mo.App. W.D.2001) (internal citations omitted). Further, we presume "that the trial court reviewed all the evidence and awarded custody in light of the best interest of the child." *Davidson v. Fisher*, 96 S.W.3d 160, 164 (Mo.App. W.D.2003).

The trial court decided that Ms. Simon–Harris' evidence was not sufficiently convincing to prevent allowing Mr. Harris to be an active part of Earen's life, and found that both parents are fit and proper custodians. It resolved the conflicting evidence in Mr. Harris' favor and we defer to that decision. *Cutting*, 39 S.W.3d at 543. Further, there was sufficient evidence to support the parenting schedule that the court applied. Both parents wanted to be actively involved in Earen's life and since the temporary order has been in place they both have done so. They both testified about the care they provide Earen and Mr. Harris and Rana presented evidence about how happy Earen is at his father's home. Also, Ms. Simon–Harris was prepared to continue with the temporary parenting schedule where Mr. Harris had Earen for one week a month. If he is fit to be a parent for one week a month, we do not see how she can claim that he is not fit to be a parent for two weeks a month.

She also relies on *Ireland v. Ireland*, 914 S.W.2d 426 (Mo.App. W.D.1996), to support her claim that the alternating parenting schedule is not in Earen's best interests. She is correct that we stated in *Ireland* that we disfavored "arrangements that require frequent alternation of a child's physical custody," *id.* at 429, but that was not the main thrust of the opinion. In *Ireland*, the initial dissolution order gave the father custody of the parties' child and the mother visitation privileges. *Id.* at 428. When the father asked for permission to move his daughter to Ohio, the trial court authorized the move but ordered that the mother be allowed to visit the child every two months for a sixty-day period. *Id.* We held that the modified visitation schedule basically established a joint physical custody arrangement, which was not the intent of the original decree and not in the child's best interests. *Id.* at 429. We then stated that we disfavored arrangements requiring frequent alternation of the child's physical custody and held that a different visitation schedule should be devised. *Id.* Because *Ireland* is really about a de facto modification of custody, that case is not applicable to the current situation.

■ Our statement in *Ireland* that we disfavored frequent alternation of custody did not create a rule against such an arrangement. In many cases our courts have approved parenting schedules that involve frequent alternations of the child's physical custody. *See Stewart v. Stewart*, 988 S.W.2d 622, 623 (Mo.App. W.D.1999) (father had visitation from Friday through Sunday on alternate weekends and from Monday evening to Thursday morning on

the other weeks); *A.J.K. by R.K. v. J.L.*, 980 S.W.2d 81, 85 (Mo.App. E.D.1998) (parties had physical custody for two-week alternating periods); *In re Marriage of Pobst*, 957 S.W.2d 769, 773 (Mo.App. S.D. 1997) (custody alternated every two weeks); *Alt v. Alt*, 947 S.W.2d 433, 434–35 (Mo.App. W.D.1997) (affirming award of custody that alternated every two weeks); *Burkhart v. Burkhart*, 876 S.W.2d 675, 679 (Mo.App. W.D.1994) (custody alternated on a three-month basis). "Where parents live apart there is no way to provide for joint physical custody other than by transferring children from one parent to another at designated times." *A.J.K.*, 980 S.W.2d at 87 (internal quotation marks and citation omitted). "If there is to be 'frequent and continuing contact with both parents' as specified in section 452.375.1(2), disruption is unavoidable." *Burkhart*, 876 S.W.2d at 679.[8]

When the trial court determines the best interest of the child, it considers the factors listed in section 452.375.2. *Flathers v. Flathers*, 948 S.W.2d 463, 471 (Mo.App. W.D.1997). Even when the trial court does not make specific findings, "we are entitled to presume that the trial court considered all the evidence and made its award in the best interests of the child." *Id.* The current parenting schedule allows Earen to spend a lot of time with both of his parents, as well as his older half-sisters. It complies with our state's public policy to provide "frequent, continuing and meaningful contact with both parents." § 452.375.4. Because Earen obviously cannot alternate custody like this once he starts school, this plan will only be in effect until Earen is old enough to go to school.[9] Such a short-term arrangement is not necessarily against his best interests. *Burkhart*, 876 S.W.2d at 679. There is nothing in the record to show that the two-week alternation until Earen begins school is detrimental. *See id.* ("[T]here is nothing in the record to show that the three month rotation until Joshua is attending school would be detrimental to his best interest."). In fact, the evidence suggests that Earen has already adjusted well to the temporary parenting schedule in place. *Cf. Pobst*, 957 S.W.2d at 773 (although the parents alternated physical custody of the children every two weeks, the record indicated that they had adjusted to the custody arrangement).

We acknowledge that there is one major difference between this parenting schedule and the several similar other ones that we have approved of: the parties in this case live in different states whereas the parties in the other cases lived in the same city. The constant shuttling back and forth between parents who live several states apart may be extremely disruptive and confusing for a child. *Ireland*, 914 S.W.2d at 429. But it does not appear that this

---

8. After *Burkhart* was decided, the statutory language was changed slightly and now reads "frequent, continuing and meaningful contact." § 452.375.1(3). But this language change does not alter the tenor of the statute and the statements in *Burkhart* remain appropriate in this circumstance.

9. The order itself states that this arrangement will last only until Earen enters school. But we note that once Earen starts school, the custody award of joint legal and physical custody need not be changed unless the circuit court finds a substantial or significant change in circumstances that warrants such modification. *In re McIntire*, 33 S.W.3d 565, 569 (Mo.App. W.D.2000). The allocation of time spent with both parents, however, will need to be changed. Such change will likely result in them no longer having a 50/50 split, since they live in different states, but that does not mean that they must cease to have joint physical custody. *Tilley v. Tilley*, 968 S.W.2d 208, 213 (Mo.App. S.D.1998) (joint physical custody does not require the parents to have an equal amount of time with the child).

plan is proving to be disruptive or confusing for Earen. Even under the plan that Ms. Simon–Harris wanted the court to adopt, where Earen spent only one week a month with Mr. Harris, he would still have to travel between the parties' homes twice a month; now it just happens every two weeks. Spending two weeks with his father instead of one week is no more disruptive. Based on the evidence in this case, we think this plan is fine until Earen starts school. The trial court had broad discretion to craft a parenting schedule, and absent any abuse of this discretion, we will not disturb the parenting schedule that it drafted. *Graves v. Graves*, 967 S.W.2d 632, 640 (Mo.App. W.D.1998). Ms. Simon–Harris' second point is denied.

We must, however, remand the custody decision on one minor point. The trial court needs to designate the address of one of the parties as Earen's address for mailing and educational purposes, as required by section 452.375.5(1). In all other respects, the custody award and schedule are affirmed.

### 3. Parenting Plan

■■ There are, however, some problems with the specific parenting plan in this case. Section 452.375.9 states that

Any judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310. Such plan may be a parenting plan submitted by the parties pursuant to section 452.310 or, in the absence thereof, a plan determined by the court. . . .

Section 452.310.7 requires a specific written schedule detailing the custody and visitation time for specific holidays, a specific written plan regarding legal custody and detailing how decision-making will be done, and a plan for how expenses will be paid. To prevent repeated custody and visitation disputes, the trial court must adopt a complete and comprehensive parenting plan. *Davidson*, 96 S.W.3d at 166. Neither party really raises the issue of a proper parenting plan, although Ms. Simon–Harris mentions that the trial court failed to address the issue of holidays, but we may address this issue even if the parties have not raised it. *Id.* at 165.

The trial court in this case adopted Mr. Harris' plan, but only sections 1–3.[10] The plan as adopted is not fully compliant with section 452.375.9 because it does not contain all of the required arrangements as set out in section 452.310.7. Some of the missing required arrangements are included in the order itself, but the statute requires that all of the arrangements be in the parenting plan; it does not say that they can be in either the parenting plan or the court order. *See* §§ 452.375.9 and 452.310.7. The parenting plan failed to provide for the following: (1) a schedule for major holidays, the child's birthday, Mother's Day, and Father's Day, sections 452.310.7(1)(a) and (c); (2) the times and places for transfer of the child, section 452.310.7(1)(e); (3) a plan for sharing transportation duties, section 452.310.7(1)(f); (4) a dispute resolution procedure, section 452.310.7(2)(f); and (5) anything about how the expenses of the child will be paid, section 452.310.7(3). The times and places for transfer of the child, transportation duties, and some expenses are discussed in the order but not in the parenting plan as required.[11] §§ 452.375.9 and 452.310.7.

---

10. The remainder of the plan set up a custody schedule different from the alternating two-week plan that the trial court adopted.

11. We note that it was unnecessary for the court to provide any schedule for school holidays, section 452.310.7(1)(b) and (d), because Earen is less than five years old. As already

The Notice of Entry of Order states that the trial court found vacation and holiday orders unnecessary because the "child's physical custody [was] alienated." But the statute does not provide an exception for scheduling all the holidays and setting out the rules for legal custody and expenses, so the court was not free to disregard them. Further, the fact that the parties have Earen every two weeks does not remove the potential for problems when holidays fall during those two weeks. Both parents are likely to want Earen on his birthday. They will want him on Mother's Day or Father's Day, as appropriate, regardless of whose week it is. And they are likely to want to alternate the other holidays. Regardless, to avoid future disputes the trial court should have provided a schedule for these holidays. Even in the several cases where the parties are granted alternating visitation similar to that ordered here, the court still sets out a holiday schedule. *See e.g., A.J.K.*, 980 S.W.2d at 85–86 (parties alternate custody every two weeks and certain holidays); *Tilley*, 968 S.W.2d at 210 (parents alternate custody every other week and alternate holidays).

The plain language of section 452.375.9 requires the trial court to include a specific written parenting plan following section 452.310.7. *Brandow v. Brandow*, 18 S.W.3d 584, 587 (Mo.App. W.D.2000). The trial court did not comply with these statutes. So we must reverse and remand for the trial court to prepare a parenting plan in compliance with these provisions. *In re Marriage of Parmenter*, 81 S.W.3d 234, 237 (Mo.App. S.D.2002); *Bridgeman v. Bridgeman*, 63 S.W.3d 686, 692 (Mo.App. E.D.2002). We are not reversing the actu-al time division; on remand the trial court merely needs to write a compliant parenting plan based on that division.

## C. Tax Exemption

■ Mr. Harris complains that the award of the dependency tax exemption to Ms. Simon–Harris was an abuse of discretion. But "[a] trial court has broad discretion in awarding tax dependency deductions." *Blechle v. Poirrier*, 110 S.W.3d 853, 856 (Mo.App. E.D.2003). The trial court abuses its discretion when its "ruling is clearly against the logic of the circumstances before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Hancock v. Shook*, 100 S.W.3d 786, 795 (Mo. banc 2003) (internal citations omitted).

Under federal law, the parent who has custody for the greater portion of the calendar year gets the exemption.[12] 26 U.S.C. § 152(e)(1). This parent is called the "custodial parent" for federal tax purposes. *Id.* There is an exception to this rule: the noncustodial parent may take the exemption if the custodial parent signs a written declaration that he or she will not claim the child as a dependent and the noncustodial parent attaches the written declaration to his or her tax return. 26 U.S.C. § 152(e)(2).

In this case the parties each have the child for approximately fifty percent of the time. So it is unclear which parent, if

noted, a new plan will have to be made once Earen starts school.

**12.** Form 14 assumes that the parent entitled to receive support claims the tax exemption for the child. **DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14. ASSUMPTION 7.**

either, fits the federal definition of the custodial parent. The presumption of who gets the exemption is, therefore, difficult to apply to this situation. And regardless of the presumption, the trial court has discretion to award the exemption to either parent. *Blechle,* 110 S.W.3d at 856.

Mr. Harris claims that the trial court did not provide any rationale for allocating the tax exemption to Ms. Simon–Harris. He then points to various reasons why he thinks he should get the tax benefit: specifically that the parties have similar incomes and that he is the sole support of his two older daughters. But these reasons do not create any type of requirement that the trial court award him the tax exemption. The trial court had discretion to decide who got the exemption. *Blechle,* 110 S.W.3d at 856. The fact that the parties have similar incomes and that Mr. Harris already claims his two daughters could also support giving the exemption for Earen to Ms. Simon–Harris. Moreover, the trial court found that claiming the exemption would benefit Ms. Simon–Harris more. Clearly, reasonable minds could differ over who should receive the deduction. Because the allocation of the tax exemption is completely within the trial court's discretion, and the presumption is difficult to apply to this case, we find no abuse of discretion and defer to the trial court's decision to grant Ms. Simon–Harris the tax exemption. Mr. Harris' second point is denied.

But we do want the trial court to make an addition to its order about the tax exemption. Because the parties will have Earen for similar amounts of time each year, Ms. Simon–Harris could end up not having Earen "for a greater portion of the calendar year." If a dispute arises over who has Earen for more of the year and is, therefore, entitled to claim the exemption, the trial court's order, by itself, will not be sufficient. Under the current 26 U.S.C. § 152(e), the trial court does not have the authority to merely order that the non-custodial parent get the dependency exemption. *Vohsen v. Vohsen,* 801 S.W.2d 789, 791 (Mo.App. E.D.1991); 26 U.S.C. § 152(e)(1). To effectuate the allocation of the tax exemption to the non-custodial parent, the trial court must order the custodial parent to annually sign the prescribed declaration described in 26 U.S.C. § 152(e)(2)(A). *Mehra v. Mehra,* 819 S.W.2d 351, 357 (Mo. banc 1991) (approving of *Vohsen* ). Although we believe that the presumption in 26 U.S.C. § 152(e) does not apply in this case, we want to err on the side of caution with respect to ensuring that Ms. Simon–Harris will face no difficulties in claiming the exemption. Since we are remanding this case to deal with child support and the parenting plan, on remand the trial court should also modify its order to require Mr. Harris to sign the prescribed declaration annually so that there will be no doubt that Ms. Simon–Harris may take the exemption. *Jordan v. Jordan,* 984 S.W.2d 878, 883 (Mo.App. W.D. 1999) (the trial court may order the custodial parent to execute a waiver of the exemption in compliance with 26 U.S.C. § 152(e)(2)).

**D.  Judgment for Past Tax Losses**

◼  Mr. Harris also complains about the trial court's order that he pay Ms. Simon–Harris $1,914 for tax relief from the dispute over who could take the dependency exemption in 2002. Mr. Harris claims that there are several problems with this award. First, he claims that there is no case law allowing a trial court to look back and allocate a tax exemption taken while the parties were still married. Second, he claims that the amount that Ms. Simon–Harris claims she lost because she could not take the exemption is based on hearsay and so evidence about that

amount should not have been admitted as proof of her loss. Third, he claims that even if we were to find that the trial court had the authority to allocate a tax exemption at a time prior to the divorce, the amount of the award was excessive. He claims that she can only recover up to the amount he benefited.

As stated earlier, we will affirm the trial court's judgment in a dissolution action if there is sufficient evidence to support it, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. *Morse*, 80 S.W.3d at 902–03. Mr. Harris is correct that our case law only discusses the allocation of tax exemptions in dissolution cases. There are no cases where the trial court decided how the parties should have allocated the dependency exemptions when they were still married and then gave an award to one party based on its decision of how the exemptions should have been allocated.

In considering the 2002 exemption, the trial court logically thought that Ms. Simon–Harris was the parent entitled to take the exemption. Although the parties were not yet divorced, the presumption under 26 U.S.C. § 152(e)(1) appears to apply to their situation. The custodial parent gets the exemption when the parties live apart at all times during the last six months of the calendar year. 26 U.S.C. § 152(e)(1)(A)(iii). Since the parties never lived together, they certainly were apart during the last six months of 2002. Both parties testified that Mr. Harris had little contact with Earen during that time, although they dispute the reason for this, so Ms. Simon–Harris was the custodial parent in 2002 under the federal definition and entitled to the exemption. *Tate v. Tate*, 920 S.W.2d 98, 105 (Mo.App. E.D.1996) (if the tax exemption is not allocated to a particular parent, the custodial parent is entitled to take the exemption).

And while there are no cases specifically allowing the trial court to allocate a pre-divorce exemption, there also are no cases or statutes precluding the trial court from making this decision. The trial court was simply resolving a dispute that arose because the parties were divorcing. It is true that the parties were not divorced in 2002, but some dissolution actions take more time. The 2002 taxes were filed during this interim period. The trial court was not really looking back and allocating tax decisions made during the marriage; this exemption was claimed while the divorce proceedings were happening. Everyone was aware of a potential dispute over this issue and the trial court merely resolved it.

The South Dakota case of *Jacobson v. Jacobson*, 611 N.W.2d 210 (S.D.2000), further supports the trial court's decision. In *Jacobson*, the trial court changed the original dissolution decree, taking the dependent exemption from the father and giving it to the mother. *Id.* at 212–13. The trial court initially made its decision effective for the 1999 tax year, but later changed its decision to be effective for the 1998 tax year. *Id.* at 216. A South Dakota statute stated that only payments that accrue while a petition for modification is pending may be modified, and only from the date that the parties have notice of the petition. *Id.* at 216–17. The South Dakota Supreme Court held that, therefore, the trial court erred in making the modification apply to the 1998 tax year, holding it did not apply until 1999 because the petition for modification was not served until February 1999. *Id.* at 217.

Section 454.496.4 is similar to the South Dakota statute, stating that "[t]he only support payments which may be modified are payments accruing subsequent to the service of the motion upon all parties to the motion." Examining our statute in

light of the South Dakota case, we find support for the trial court to modify how the parties dealt with a particular issue that arose while the divorce was pending. The parties were discussing a divorce when Mr. Harris claimed Earen as a dependent in 2002. The trial court could modify how the exemption was claimed because that exemption accrued subsequent to the service of the petition to dissolve the marriage. Mr. Harris cannot claim surprise because he knew that the divorce was pending.

The parties dispute whether there was any agreement about claiming Earen for 2002. Mr. Harris testified that the parties had agreed to both take Earen as a dependent, based on the amount of time that they were responsible for him. Ms. Simon–Harris, however, claims that they did not have any agreement. Because the circuit court awarded Ms. Simon–Harris the money she lost because she could not claim Earen, presumably the court believed Ms. Simon–Harris and not Mr. Harris about the existence of an agreement. We defer to the circuit court's credibility decision. *Patton*, 973 S.W.2d at 145.

There was sufficient evidence to support the trial court's decision finding that Ms. Simon–Harris was entitled to the 2002 dependency exemption and should, therefore, be reimbursed for her losses due to Mr. Harris claiming that exemption. Further, this was a reasonable application of the federal law and section 454.496.4. So we see no reason to reverse the trial court's decision. We want to make it clear, however, that this decision in no way sanctions allowing the trial court to regularly look back at what parties did while they were still married and reallocate those tax decisions. This case presented a unique situation because the exemption was claimed while the divorce was pending but before the trial court had issued an order with

respect to the dependency exemption. We have not decided whether this would be an appropriate decision if the parties were not in the process of divorcing at the time the exemption was taken.

■ Because we decide that the trial court could look back at the exemption claimed in 2002, we must consider Mr. Harris' other two claims. He first asserts that Ms. Simon–Harris' claim that she lost $2,914 is hearsay. During trial, Ms. Simon–Harris testified that if she had been able to claim Earen as a dependent she would have received federal and state tax refunds totaling $2,914. When she attempted to enter the spreadsheets and notes demonstrating her claimed tax losses, Mr. Harris objected that the numbers were speculative and based on hearsay. The trial court admitted the exhibit "more as a demonstrative exhibit on what she's asking."

■ Hearsay is an out-of-court statement used to prove the truth of the matter asserted which depends on the veracity of the statement for its value. *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 59 (Mo. banc 1999). Such out-of-court statements can be admitted as merely demonstrative evidence. *Balakas v. Dir. of Revenue*, 109 S.W.3d 197, 199 (Mo.App. E.D. 2003). Ms. Simon–Harris did rely on her statements of how much money she would have been refunded and how much money she owed as proof that she lost $2,914. But she included copies of her tax forms and the estimates of her refund when she claimed Earen as a dependent. The only hearsay comes from the statements that Ms. Simon–Harris testified were made by the child dependency expert that she spoke with, and Mr. Harris did not object to that evidence. The specific amounts she claimed to have lost did not come from that expert. The trial court only granted her a judgment for the amount of money

that she lost by not claiming Earen ($2,914 minus the $1,000 Mr. Harris had already paid her); this determination must have been based on her submitted tax documents. So hearsay is not a problem.

Mr. Harris then asserts that $1,914 was excessive, relying on *Smith v. Smith,* 17 S.W.3d 592 (Mo.App. W.D.2000). But *Smith* does not apply to this case because it involves a claim for damages based on unjust enrichment. *Id.* at 597. This case does not involve a claim of unjust enrichment; Ms. Simon–Harris is simply claiming damages. The trial court found her claimed amount of loss credible and we defer to that finding. *Patton,* 973 S.W.2d at 145.

We affirm the finding that Ms. Simon–Harris is entitled to relief on this ground, and the trial court's award of the full amount of loss that she claimed. Mr. Harris' first point is denied.

### III. CONCLUSION

We affirm the trial court's decision on custody arrangements and parenting time. We also affirm its decision to award Ms. Simon–Harris the dependency exemption for Earen and to reimburse her for her losses due to not being able to claim Earen as a dependent in 2002. We reverse the trial court's judgment with regard to child support, and remand for the trial court to follow the two-step procedure from *Woolridge* to determine the proper amount of child support to be paid. We also reverse and remand for the trial court to enter a parenting plan that fully complies with sections 452.375.9 and 452.310.7. On remand, the trial court also needs to modify its order and name one of the parties' residences as Earen's residential address in compliance with section 452.375.5(1). Therefore, we affirm in part reverse in part and remand this case to the trial court.

JOSEPH M. ELLIS, C.J. and LISA WHITE HARDWICK, J., concur.